David Michael TSCHEU, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A12–0480.

Supreme Court of Minnesota.

April 24, 2013.

Eric A. Rice, Saint Paul, MN, for appellant.

Lori Swanson, Attorney General, Saint Paul, MN; and Donald F. Ryan, Crow Wing County Attorney, Brainerd, MN, for respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant David Michael Tscheu was convicted of first-degree murder while committing first-degree criminal sexual conduct causing personal injury, Minn. Stat. § 609.185(a)(2) (2012), in connection with the death of Bonita Thoms. We affirmed Tscheu's conviction on direct appeal. *State v. Tscheu*, 758 N.W.2d 849, 865 (Minn.2008). Tscheu filed a petition for postconviction relief, alleging a claim of newly discovered evidence. After an evidentiary hearing, the postconviction court concluded that Tscheu's newly discovered evidence was not credible and, therefore, was not likely to produce a result more favorable to Tscheu. Because the record

supports the postconviction court's credibility determinations, we affirm.

## I.

The facts surrounding the death of Bonita Thoms are set forth in detail in *Tscheu*, 758 N.W.2d at 852–57. We limit our discussion to the facts directly related to this appeal. Police found Thoms dead in her bathtub on February 26, 2005. Thoms died sometime between 3:18 p.m. and 9:18 p.m. on February 25, 2005, as a result of asphyxia from drowning. A sexual assault exam revealed semen matching Tscheu's DNA inside Thoms' rectum.

After Tscheu's semen was discovered, he was arrested and indicted by a grand jury for first-degree murder while committing first-degree criminal sexual conduct causing personal injury, Minn.Stat. § 609.185(a)(2). Tscheu pleaded not guilty. At trial, the defense's theory was that Tscheu had consensual sex with Thoms the night before her death and a third party later murdered her. The defense identified M.H. as a potential third-party perpetrator. A jury found Tscheu guilty of the charged offense. The district court convicted Tscheu and sentenced him to life in prison. Tscheu appealed his conviction and we affirmed. *Tscheu*, 758 N.W.2d at 865.

In 2009, Tscheu filed a petition for postconviction relief pursuant to Minn.Stat. § 590.01 (2012), requesting a new trial based on newly discovered evidence. Tscheu claims the new evidence offered by A.C. and Thoms' stepson supports his trial theory that M.H., and not Tscheu, murdered Thoms.

At a postconviction evidentiary hearing, A.C. testified to the following events. M.H., M.H.'s girlfriend, and A.C. left the girlfriend's apartment together at midnight on the morning of February 25, 2005. The group drove to the home of M.H.'s

half-brother—across the street from Thoms' house. Both M.H. and his girlfriend went inside Thoms' house. When M.H. and his girlfriend returned to the car, M.H. asked A.C. to turn the heat up because he was wet and cold, the girlfriend was upset, and M.H. was carrying a bag. The group drove to Starbuck where they stayed for approximately 5 to 7 days after the incident at Thoms' house. A.C. also testified that he did not know Thoms' stepson.

While testifying, A.C. also admitted to inconsistencies between his testimony and affidavits he signed in 2009 and 2010. Specifically, A.C.'s testimony regarding the time and the day the group arrived at Thoms' house was inconsistent. At the postconviction hearing, A.C. testified the group left the apartment around midnight on the morning of February 25, 2005. But in an October 2010 affidavit, A.C. stated the group left the apartment sometime between 7:00 p.m. and 10:00 p.m. on the evening of February 25, 2005. A.C. also admitted that affidavits he signed in 2009 and 2010 were inconsistent as to other details, including: whether M.H. was on the phone when A.C. arrived at the apartment; how long M.H. and his girlfriend were inside Thoms' house; the time the group left Thoms' house; how wet M.H. was when he left Thoms' house; whether the girlfriend was "hysterical"; and whether A.C. was "forced" to stay in Starbuck.

At the postconviction evidentiary hearing, Tscheu also presented a letter, addressed to Tscheu's mother, and an affidavit, both allegedly written by Thoms' stepson.[1] But the stepson did not testify at the hearing. In the affidavit, the stepson claimed he was "very sick" and did not "want a[n] innocent man to be punished for something he did not do." The affidavit described his version of the February 25, 2005 events. The stepson was in Minnesota with M.H. at the time of Thoms' death. The stepson drove M.H. to Thoms' house so M.H. could collect money from Thoms. The stepson waited in the car and M.H. returned with Thoms' purse and keys. M.H. planned to keep the purse and keys until Thoms paid him. The stepson returned to California. The stepson's letter recited a similar series of events.

After the hearing, the postconviction court found that A.C.'s affidavits and testimony were "conflicting, not credible, and ... not likely to produce a result more favorable to" Tscheu. As to the letter and affidavit by the stepson, the court found the evidence was in direct conflict with evidence that M.H. was in Starbuck on the afternoon and evening of February 25, 2005. Because the newly discovered evidence was not credible, the postconviction court concluded that it was "not likely to produce a result more favorable" to Tscheu. The postconviction court, therefore, denied Tscheu's petition for postconviction relief.

1. The stepson allegedly signed the letter and affidavit on January 22, 2008. We issued our opinion in Tscheu's direct appeal on December 31, 2008. It is unclear from the record whether the claim based on the stepson's affidavit was known by Tscheu at the time of his direct appeal. See Minn.Stat. § 590.01, subd. 1 ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."). Because the State does not challenge the timeliness of the claim based on the stepson's affidavit, we consider the claim on the merits. See Reed v. State, 793 N.W.2d 725, 736–37 (Minn.2010); Ford v. State, 690 N.W.2d 706, 711 n. 4 (Minn.2005); cf. Walen v. State, 777 N.W.2d 213, 216 (Minn.2010) (electing not to decide whether the petitioner's claims were Knaffla barred because they failed on the merits).

Tscheu now appeals, arguing the record does not support the postconviction court's credibility determinations because his newly discovered evidence did not present conflicting facts. As discussed below, we conclude the record supports the postconviction court's credibility determinations, and therefore the postconviction court did not abuse its discretion in denying Tscheu's petition for postconviction relief.

## II.

 We review the denial of a petition for postconviction relief for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn.2010). The "postconviction court 'abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record.'" *Riley v. State*, 819 N.W.2d 162, 167 (Minn.2012) (quoting *Riley v. State*, 792 N.W.2d 831, 833 (Minn.2011)). Our court affords great deference to a postconviction court's "findings of fact and will not reverse the findings unless they are clearly erroneous." *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001). Clearly erroneous means we have a " 'definite and firm conviction that a mistake has been made.'" *State v. Evans*, 756 N.W.2d 854, 870 (Minn.2008) (citation omitted).

 A person can petition a court for postconviction relief pursuant to Minn. Stat. § 590.01, subd. 1, if "the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state." If a violation is established, the postconviction court may "vacate and set aside the judgment [or] ... resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate." *Id.* A petitioner bears the burden to establish by a preponderance of the evidence that facts exist that warrant postconviction relief. *Williams v. State*, 692 N.W.2d 893, 896 (Minn.2005).

 A petitioner is entitled to postconviction relief based on newly discovered evidence under the test articulated in *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997), when the petitioner establishes that: "(1) the evidence was not known to the petitioner or counsel at the time of trial; (2) the failure to learn of the evidence before trial was not due to a lack of diligence; (3) the evidence is material, not merely impeaching, cumulative, or doubtful; and (4) the evidence would probably produce either an acquittal or a more favorable result." *Roby v. State*, 808 N.W.2d 20, 26 n. 5 (Minn.2011). We have held that for evidence to meet the materiality requirement it "must be credible." *Race v. State*, 504 N.W.2d 214, 217–18 (Minn.1993). The postconviction court has discretion to decide whether to grant a new trial on the basis of newly discovered evidence. *State v. Bowles*, 530 N.W.2d 521, 534 (Minn.1995).

 We conclude, despite Tscheu's assertion to the contrary, that the record supports the postconviction court's determination that the newly discovered evidence presented "conflicting" facts. First, there were many inconsistencies between A.C.'s affidavits and testimony, including: M.H.'s telephone conversation; the length of time M.H. and his girlfriend were inside Thoms' house; the time the group left Thoms' house; how wet M.H. was when he left Thoms' house; whether the girlfriend was "hysterical," and whether A.C. was "forced" to stay in Starbuck.

Second, A.C.'s testimony conflicts with the stepson's affidavit. According to A.C.'s testimony, M.H. left Thoms' house on the morning of February 25, 2005, and spent the rest of the day in Starbuck. In contrast, the stepson's affidavit asserts

that sometime during the day of February 25, 2005, M.H. was at Thoms' house with the stepson. A.C. testified that he does not know the stepson and denies that the stepson was with the group when they arrived at Thoms' house. The evidence conflicts because A.C. and the stepson describe inconsistent events—M.H. could not be both in Starbuck and at Thoms' house during the afternoon or evening of February 25, 2005.

Third, A.C.'s testimony directly contradicts the facts presented at the 2007 murder trial regarding Thoms' time of death. At the postconviction hearing, A.C. testified that the group went to Thoms' house at midnight on the morning of February 25, 2005, and left for Starbuck hours later. At trial, the medical evidence showed that Thoms died sometime between 3:18 p.m. and 9:18 p.m. on February 25, 2005. Accordingly, A.C.'s testimony would arguably place M.H. in Starbuck at the time Thoms was murdered.

The postconviction court conducted a hearing on Tscheu's newly discovered evidence claims. From the evidence presented at the hearing, the postconviction court prepared detailed and thorough findings and conclusions rejecting those claims. Based on the inconsistencies in the new evidence presented at the postconviction hearing, we are not left with a "definite and firm conviction" that the postconviction court was mistaken when it found that the newly discovered evidence presented by Tscheu was not credible. *See Evans,* 756 N.W.2d at 870.

In light of these credibility determinations, there was no abuse of discretion by the postconviction court in rejecting Tscheu's request for relief because the affidavits, testimony, and letter were not likely, on retrial, to produce a result more favorable to Tscheu. *See State v. Fort,* 768 N.W.2d 335, 345 (Minn.2009) (conclud-

ing the postconviction court did not abuse its discretion when, after a hearing, it found the evidence proffered to show an alternative perpetrator committed the crime "lacked credibility"); *Bowles,* 530 N.W.2d at 534–35 (holding a recantation was not likely to produce a result more favorable to the petitioner because the remaining witnesses had not recanted); *Wayne v. State,* 498 N.W.2d 446, 448 (Minn.1993) (stating a postconviction court did not abuse its discretion when it found new evidence would not produce a result more favorable to the petitioner because it conflicted with the uncontroverted evidence presented at trial); *Race v. State,* 417 N.W.2d 264, 267 (Minn.1987) (holding a postconviction court did not abuse its discretion when it found "contradictory" evidence would not produce a result more favorable to the petitioner).

Affirmed.