John MILES, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A13–0262.

Supreme Court of Minnesota.

Dec. 11, 2013.

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Lake Elmo, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Free-man, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

## OPINION

GILDEA, Chief Justice.

John Miles was convicted and sentenced to life in prison for the first-degree murder of Tyrone Harrell. We affirmed Miles's conviction on direct appeal. *State v. Miles (Miles I)*, 585 N.W.2d 368 (Minn.1998). This case comes to us on appeal from the postconviction court's denial of Miles's fourth petition for postconviction relief. Because we conclude that the postconviction court did not abuse its discretion in denying Miles relief, we affirm.

Our opinion in *Miles I*, 585 N.W.2d 368, contains a detailed factual description of the murder and the evidence presented at trial. We discuss in this opinion only those facts relevant to Miles's fourth petition for postconviction relief.

On July 31, 1996, the police found Tyrone Harrell shot to death in a Minneapolis driveway. *Id.* at 369. Three eyewitnesses came forward claiming to have witnessed various parts of the murder. *Id.* at 369–70. All three witnesses identified Miles in a photo line-up as the person they had seen in the alley. *Id.* In addition to the three witnesses, the State also offered evidence from Marcell Dupree Scott. Scott, who was incarcerated on a separate drug conviction, came forward in November 1996 and told authorities what he knew about the murder. *Id.* at 370. Scott testified that he saw Miles head toward the alley and then heard shots. *Id.* He also said that Miles later told him that Harrell tried to run so Miles "popped him a couple more times." *Id.*

Following his direct appeal, Miles pursued postconviction relief. The postconviction court denied his first two petitions. *Miles v. State (Miles II),* 800 N.W.2d 778, 781 (Minn.2011). In his third petition, Miles contended that new evidence, an unsworn statement by O.B., an alleged eyewitness to the murder, entitled him to a new trial. *Id.* The postconviction court denied Miles's third petition. *Id.* On appeal, we affirmed, concluding that Miles was not entitled to relief because he did not meet his obligation "to offer evidence with sufficient indicia of reliability." *Id.* at 784.

Miles filed his fourth petition for postconviction relief in September 2011. Miles alleged the existence of the same new evidence as in his third postconviction petition, but with his fourth petition, Miles included a notarized affidavit and a signed and notarized statement from O.B. The notarized statement from O.B. is the same statement that Miles submitted with his third petition for postconviction relief, except that O.B.'s signature is notarized.

In his affidavit, O.B. states that on July31, 1996, he was at a party on Penn Avenue North near the location where Harrell was shot and killed. After leaving the party, O.B. said he saw Scott shoot and kill Harrell. O.B. said he continued walking home and told only his mother and wife about what he had seen. He explained that he did not tell anyone else because he was afraid of Scott.

Because Miles's fourth petition for postconviction relief was submitted beyond the two-year limitations period in the postconviction statute, *see* Minn.Stat. § .01, subd.(a) (2012), the postconviction court properly first considered whether the petition should be dismissed on that basis. The postconviction court determined that the fourth petition was not time barred because the evidence Miles offered in support of his petition, assuming it were true, would satisfy the exception to the time bar for newly discovered evidence in Minn. Stat. § .01, subd. 4(b)(2) (2012). *See Gassler v. State,* 787 N.W.2d 575, 583 (Minn. 2010) (explaining that when addressing the newly discovered evidence exception, "we are only concerned with whether section 590.01, subdivision 4(b), permits consideration of the petition, and not with the petition's merits"); *see also* Minn.Stat. § 590.01, subd. 4(b) (stating that a "court may hear" an untimely postconviction petition if one of five exceptions is met). The postconviction court then determined that Miles was entitled to an evidentiary hearing. *See* Minn.Stat. § 590.04, subd. 1 (2012). During the hearing, Miles presented O.B.'s testimony and testimony from two others whom Miles claimed also had newly discovered evidence.

O.B. testified that he and Miles attended a barbeque at 29th and Penn Avenue North on the day of the murder. As O.B was returning to the party from the store, he saw Scott shoot Harrell. O.B. was unable to give any details about how the shooting started or where on his body Harrell was shot. O.B. said he did not tell the police that he witnessed the murder because he was very concerned that Scott would do something to him due to Scott's violent reputation. Even though O.B. has known Miles his whole life and considered Miles to be like family, O.B. did not tell Miles what he had seen. O.B. said that he came forward 14 years later because he had to "do the right thing."

Miles also offered the testimony of D.H., who testified that he was near the scene of the shooting and saw Scott acting suspiciously. D.H. was inside a house on the 2900 block of Penn Avenue North when he heard two to six gunshots. He then ran outside and jumped off the side of the porch. D.H. testified that he saw Scott

running from the back of the house D.H. had just exited and that Scott stuffed something in his pocket. Scott appeared nervous and jittery. But D.H. did not see who fired the gun or who was shot.

Finally, Miles offered the testimony of C.B., who testified that after he was released from prison in August of 1996, he ran into Scott at a friend's house. C.B. asked Scott if it was true that he (Scott) had killed Harrell. Scott said "yeah," and it was because of a bad drug deal.

Following the evidentiary hearing, the postconviction court denied Miles's fourth petition for postconviction relief. The court found O.B.'s story to be "poppycock" and so incredible that Miles did not meet any of the four prongs of the test set out in *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997), for a new trial based on newly discovered evidence. The court found that D.H.'s story, even if true, would not likely lead to an acquittal or a more favorable outcome at trial. The court found C.B.'s statement did not satisfy the *Rainer* test because the statement was not admissible as substantive evidence that Scott was the killer and at most could be offered to impeach Scott. The court also dismissed Miles's claim that he was entitled to a new trial in the interests of justice, concluding that Miles was rearguing his meritless newly discovered evidence claim. This appeal follows.

■ In reviewing a postconviction proceeding, we determine "whether there is sufficient evidence to sustain the postconviction court's findings." *Schleicher v. State*, 718 N.W.2d 440, 444–45 (Minn.2006) (citations omitted) (internal quotation marks omitted). We review the denial of a petition for postconviction relief for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn.2010). There is an abuse of discretion when the postconviction court's "decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn.2012). We afford "great deference to a [postconviction] court's findings of fact and will not reverse the findings unless they are clearly erroneous." *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001). But we review a postconviction court's legal conclusions de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007).

On appeal, Miles argues that the postconviction court erred in denying him a new trial based on new evidence. Miles also argues that the court abused its discretion in how it handled evidence that he submitted after the evidentiary hearing. Finally, Miles contends that the court erred in refusing to grant relief in the interests of justice. We consider each argument in turn.

## I.

■ We turn first to Miles's argument that the postconviction court abused its discretion in concluding that Miles was not entitled to a new trial based on new evidence. The court reached this conclusion after applying the test for a new trial based on newly discovered evidence from *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997). The State contends that the court, rather than applying the *Rainer* standard, should have evaluated the merits of Miles's petition under the standard in Minn.Stat. § 590.01, subd. 4(b)(2), which, as noted above, provides an exception to the postconviction statute's time bar for claims based on newly discovered evidence. Minnesota Statutes § 590.01, subd. 4(b)(2), requires the petitioner to prove innocence by a "clear and convincing standard," *id.*, whereas the *Rainer* standard requires only that the petitioner prove he is entitled to relief by a fair preponderance of the evidence. *See Williams v. State*,

692 N.W.2d 893, 896 (Minn.2005). Once the postconviction court determined that Miles's petition was not time barred, the question that remained for decision was whether Miles was entitled to a new trial on the basis of new evidence. The test set forth in *Rainer* controls that question. Accordingly, we hold that the court properly applied the *Rainer* standard to assess the merits of Miles's petition.

▮ Under the *Rainer* standard, a petitioner is entitled to a new trial based on newly discovered evidence when the petitioner establishes: (1) the evidence was unknown to the petitioner or petitioner's counsel at the time of trial; (2) the failure to learn of the evidence prior to trial was not because of a lack of diligence; (3) the evidence is material, not merely impeaching, cumulative, or doubtful; and (4) the evidence would probably produce either an acquittal or a more favorable result. *Roby v. State*, 808 N.W.2d 20, 26 n. 5 (Minn.2011) (citing *Rainer*, 566 N.W.2d at 695). Miles bears the burden of establishing that facts warranting relief exist by a fair preponderance of the evidence. *Williams*, 692 N.W.2d at 896. And he must establish each of the four prongs in order to be entitled to relief. *See State v. Hurd*, 763 N.W.2d 17, 34 n. 19 (Minn.2009).

### A.

▮ With respect to the new evidence Miles offered from O.B., the postconviction court found O.B.'s testimony was "so incredible" that it failed to meet any of the *Rainer* prongs.[1] We need not consider whether the postconviction court was cor- rect in concluding that Miles did not meet *any* of the four prongs of the *Rainer* standard because our analysis of the third prong is dispositive. *See Hurd*, 763 N.W.2d at 34 n. 19 ("Because our analysis on the fourth prong is dispositive, we do not address the parties' arguments regard- ing whether the evidence is material, as required by the third prong.").

▮ In order for evidence to meet the third prong of the *Rainer* test, the evi- dence must be credible. *Tscheu v. State*, 829 N.W.2d 400, 403 (Minn.2013). The postconviction court found that O.B. was not credible because the court was not persuaded by O.B.'s explanation as to why he waited 14 years to come forward. In addition, the court determined that O.B. was not credible based on his inconsistent statements. The postconviction court is in the best position to evaluate witness credi- bility and so we defer to the court's credi- bility determinations. *Doppler v. State*, 771 N.W.2d 867, 875 (Minn.2009). The record here amply supports the court's determination that O.B. was not credible.

▮ O.B.'s testimony at the evidentia- ry hearing was inconsistent with either his affidavit or his 2010 statement on at least three points. First, at the hearing, O.B. stated that he saw a jeep in the alley and kept walking toward it on his way *back* to the barbeque when the shooting happened. In his affidavit and statement, however, O.B. said he was *leaving* the barbeque when he witnessed the shooting. Second, in his statement, O.B. said that it was already dark when he witnessed the shooting. At the evidentiary hearing, however, O.B. tes-

1. Miles argues that the postconviction court abused its discretion by applying a heightened standard to assess O.B.'s credibility. He pro- poses that we require postconviction courts to determine if there is corroboration of the newly discovered evidence rather than to prove the truthfulness of the evidence. Miles failed to raise this argument in the postcon- viction court, and thus it is waived. *Schleich- er v. State*, 718 N.W.2d 440, 445 (Minn.2006) (" 'It is well settled that a party may not raise issues for the first time on appeal' from denial of postconviction relief." (quoting *Azure v. State*, 700 N.W.2d 443, 447 (Minn.2005))).

tified that it was merely getting dark at the time. Third, in his 2010 statement, O.B. stated that he just kept walking after seeing Scott shoot Harrell. At the evidentiary hearing, however, O.B. said that he turned north and ran after he witnessed the shooting.

There were also inconsistencies between O.B.'s testimony and the evidence presented at trial, including Miles's alibi defense. Two of the State's eyewitnesses saw only one man jogging north in the alley; three eyewitnesses said they did not see Scott in the alley where O.B. claimed to have seen him. Both Scott and another witness testified at trial that Scott was riding in a car just before the shooting, not on a bike, as O.B. stated at the hearing. Furthermore, O.B.'s testimony was inconsistent with Miles's alibi defense and the testimony of defense witnesses. Miles's alibi was that he was painting an apartment all day on the day of the murder in order to prepare for his girlfriend to move in with him, and that he did not go to 2911 Penn Avenue North. *State v. Miles (Miles I)*, 585 N.W.2d 368, 371 (Minn.1998). Defense witnesses also testified that there was no barbeque at 2911 Penn Avenue North on the evening of the murder. O.B., however, testified at the evidentiary hearing that there was a barbeque and that Miles was in attendance.

Based on all of these inconsistencies, the postconviction court did not err in finding that O.B. was not credible. Because O.B. was not credible, we hold that the postconviction court did not abuse its discretion in denying Miles a new trial based on O.B.'s testimony. *See Tscheu*, 829 N.W.2d at 403–04 (upholding the postconviction court's determination that new evidence was not credible given the inconsistencies between the new evidence and the original trial evidence); *State v. Fort*, 768 N.W.2d 335, 345 (Minn.2009) (holding the district court did not abuse its discretion when it concluded, after holding an evidentiary hearing, that claimed newly discovered evidence was "simply too doubtful to support . . . a new trial").

### B.

■ With respect to the new evidence Miles offered from D.H., the postconviction court found that D.H.'s testimony did not meet the fourth prong of the *Rainer* standard. Specifically, the court concluded that D.H.'s testimony, even if true, would not likely produce an acquittal or a more favorable result at a new trial. *See Rainer*, 566 N.W.2d at 695. We analyze whether new evidence is likely to produce an acquittal or a more favorable result "by examining the admissibility and weight of the evidence" at issue and considering it in light of the evidence the State admitted at trial. *State v. Hurd*, 763 N.W.2d 17, 34–35 (Minn.2009).

■ D.H. did not claim to have seen who committed the murder. But D.H. testified that he saw Scott running from the alley after the shooting and said that Scott appeared to be nervous and jittery. D.H.'s testimony that he saw Scott in the area of the shooting just after it occurred is consistent with Scott's own testimony at trial. Scott testified that he was in the yard of 2911 Penn Avenue North and then went toward the alley and witnessed part of the crime. In addition, as the postconviction court noted, D.H.'s testimony "does little to establish that it was Scott who fired the shots." Because D.H. does not claim to have seen the shooting and his testimony was largely cumulative of evidence already presented at trial, we hold that the postconviction court did not abuse its discretion in concluding that Miles was not entitled to a new trial based on D.H.'s testimony.

## C.

With respect to the new evidence Miles offered from C.B., the postconviction court concluded that C.B.'s testimony that Scott confessed to the murder was either inadmissible hearsay, or it would be admissible only for impeachment purposes. Accordingly, the court concluded that Miles was not entitled to a new trial on the basis of C.B.'s testimony. Miles argues that the court should have waited until a new trial in order to make a ruling on the admissibility of C.B.'s statement. He also argues that the court abused its discretion by not considering the value of C.B's testimony in impeaching Scott in a new trial. Miles's arguments are not persuasive.

 The postconviction court properly considered whether C.B.'s statement was admissible as a statement against interest under Minn. R. Evid. 804(b)(3) in its ruling following the evidentiary hearing.[2] *See Dobbins v. State*, ── N.W.2d ──, ──, 2013 WL 5460940, at *6 (Minn. Oct. 2, 2013) (concluding that the postconviction court did not abuse its discretion in determining that witness's out-of-court statements were hearsay, and thus, inadmissible evidence); *Hurd*, 763 N.W.2d at 35–36 (holding that the district court properly denied a petition for postconviction relief after holding an evidentiary hearing because the newly discovered evidence was inadmissible hearsay and the defendant did not show it was admissible as a statement against interest). C.B's recounting of Scott's alleged confession is hearsay because Scott made the statement out of court, and Miles offered it for the truth of the matter asserted (i.e., that Scott committed the murder). Minn. R. Evid. 801(c). A statement against interest, however, is a hearsay exception. Minn. R. Evid. 804(b)(3).

 In order for the statement-against-interest exception to apply, the declarant must be unavailable. Minn. R. Evid. 804(b). Additionally, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Minn. R. Evid. 804(b)(3). The hearsay exception for statements against interest applies "to statements exculpating the accused only if the declaration against interest is 'proven trustworthy by independent corroborating evidence that bespeaks reliability.'" *Hurd*, 763 N.W.2d at 35 (quoting *State v. Higginbotham*, 298 Minn. 1, 5, 212 N.W.2d 881, 883 (1973)); *see also Dobbins*, ── N.W.2d at ──, 2013 WL 5460940, at *4 (discussing six factors that the courts may consider when determining trustworthiness of statement against penal interest); *State v. Glaze*, 452 N.W.2d 655, 660–61 (Minn.1990) (affirming exclusion of a confession from an unavailable third-party perpetrator because record did not contain evidence corroborating the confession).

 Neither of the requirements in Rule 804(b)(3) is met here. There is no evidence in the postconviction record that Scott was unavailable to testify or would

2. In some cases, we have reversed a postconviction court's summary denial of a petition for postconviction relief based on a claim of newly discovered evidence when the petition was supported by an affidavit containing hearsay. *See Bobo v. State*, 820 N.W.2d 511, 519–20 (Minn.2012); *Dobbins v. State*, 788 N.W.2d 719, 736–37 (Minn.2010). In these cases, however, there was the possibility that the defendant could either present the hearsay statements in an admissible form or establish that they met an exception to the hearsay rule at an evidentiary hearing. *Bobo*, 820 N.W.2d at 519–20; *Dobbins*, 788 N.W.2d at 736–37. Here, Miles was given the opportunity to do just that at an evidentiary hearing, yet he failed to establish that C.B's statement was an admissible statement against interest.

be unavailable to testify if called at a new trial. It was Miles's burden to prove that Scott was unavailable, which he failed to do. *See Williams v. State*, 692 N.W.2d 893, 896 (Minn.2005) (stating that when an evidentiary hearing is held on a postconviction petition, the petitioner bears the burden of establishing by a fair preponderance of the evidence that the facts warranting relief exist). And even if Scott was unavailable to testify, there is no independent corroborating evidence demonstrating that C.B's statement is trustworthy. To the contrary, other evidence in the case, such as Scott's previous testimony and the other eyewitness testimony at trial, is inconsistent with Scott's claimed confession. *Ferguson v. State*, 826 N.W.2d 808, 814–15 (Minn.2013) (upholding the postconviction court's determination that the hearsay affidavit was inadmissible because corroborating circumstances failed to establish its trustworthiness.) The record therefore supports the postconviction court's determination that no evidence corroborated Scott's confession to the crime.

■■■■ Because C.B.'s testimony regarding Scott's alleged confession was not admissible as substantive evidence that Scott was the shooter, this testimony would not be admissible for any purpose other than to impeach Scott's testimony. Evidence that is merely impeaching is not material and does not satisfy the third prong of the *Rainer* test. *Pippitt v. State*, 737 N.W.2d 221, 228 (Minn.2007) (holding that the defendant was not entitled to a new trial because newly discovered evidence could have been used only for impeachment of a witness who testified that the defendant participated in the killing); *Dale v. State*, 535 N.W.2d 619, 622 (Minn. 1995) (concluding that new evidence that "does no more than impeach" did not entitle the defendant to a new trial). Accordingly, we hold that the postconviction court did not abuse its discretion in determining that Miles was not entitled to a new trial based on C.B.'s testimony.

## II.

We turn next to Miles's argument that the postconviction court erred in rulings made on evidence submitted after the evidentiary hearing. After the hearing, the State submitted an affidavit from a deputy with the Hennepin County Sheriff's Office in an effort to cast doubt on C.B.'s testimony. The postconviction court declined to allow Miles the opportunity to respond and stated that it would not consider the deputy's affidavit. Miles claims an abuse of discretion by the court because the court considered the deputy's affidavit without allowing Miles the opportunity to respond. Miles also copied the court on a letter he sent to the prosecutor regarding an alleged act of retaliation against O.B. for testifying at the evidentiary hearing. Miles argues that the court abused its discretion in refusing to consider the alleged retaliation against O.B.

■■■■ We will not reverse evidentiary rulings absent a clear abuse of discretion. *State v. Hooper*, 620 N.W.2d 31, 38 (Minn.2000). The defendant has the burden on appeal of proving both that the trial court abused its discretion when it made the evidentiary ruling and that the defendant was thereby prejudiced. *State v. Chommarith*, 654 N.W.2d 660, 665 (Minn. 2003). Miles has not met this burden.

■■■ In making its determination regarding C.B.'s testimony, the postconviction court did not rely on the deputy's affidavit. While the court referenced the affidavit in its order, it did so only to expressly state that it would not consider the contents of the affidavit in its ruling. Nothing in the record supports Miles's claim that the court relied on this affidavit in any way in reaching its decision. And

because the court did not consider the affidavit, Miles cannot show that he was prejudiced by the court's refusal to let him respond to it.

 The postconviction court also did not abuse its discretion by not referencing the alleged act of retaliation against O.B. in its order. The letter describing the retaliation was not part of the evidentiary record before the court. *See* Minn.Stat. § 590.04, subd. 3 (stating that a postconviction court has discretion to receive evidence in the form of affidavit, deposition, or oral testimony during a postconviction hearing). Miles never asked the court to reopen the record to allow him to present evidence about this alleged act of retaliation. Based on the circumstances, we hold that the postconviction court did not abuse its discretion by not relying on the alleged act of retaliation against O.B. when evaluating Miles's postconviction petition.

### III.

Finally, we turn to Miles's argument that he is entitled to relief based on the "interests of justice." While it is unclear from the record if Miles sought a new trial in the interest of justice,[3] we are required to construe the postconviction petition liberally, and thus we consider Miles's interest of justice claim. Minn.Stat. § 590.03 (2012).

Miles argues that the "interests of justice" warrant a new trial in his case. In support of this claim, Miles relies on the identical claims of newly discovered evidence that we considered and rejected above. Because these claims of new evidence do not entitle Miles to a new trial, we hold that Miles is not entitled to a new trial in the interests of justice. *See Gas-*

*sler v. State,* 787 N.W.2d 575, 586 (Minn. 2010) (noting that to be entitled to relief in the interests of justice, "a claim must have substantive merit").

Affirmed.

---

3. Miles stated in his postconviction petition that one of his "grounds for relief" was based on Minn.Stat. § 590.01, subd. 4(b)(5) (2012), the interests of justice exception for an un-

timely postconviction petition. But in his brief submitted after the evidentiary hearing, Miles argued that the interests of justice dictated that he receive a new trial.