*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0300**

State of Minnesota,
Appellant,

vs.

Becky Ann Rice,
Respondent.

**Filed August 11, 2014
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-13-7052

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Paul D. Baertschi, Assistant Maple Grove Attorney, Minneapolis, Minnesota (for appellant)

Peter J. Timmons, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Bjorkman, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant State of Minnesota challenges the district court's pretrial order suppressing evidence seized from respondent's home, arguing that the district court

clearly erred in finding that respondent's husband did not voluntarily consent to a search. We affirm.

## FACTS

While on routine patrol on January 11, 2013, Sergeant Daniel Wilson of the Maple Grove Police Department received a dispatch informing him that three callers reported that a white Chevy SUV was driving erratically and ran over a road sign, and that the driver threw a champagne bottle out the window. One caller reported seeing the vehicle pull into a garage, and all three callers identified the license-plate number. Sergeant Wilson ran the reported plate and arrived at the registered address, which matched the location where the caller saw the vehicle enter a garage. Respondent Becky Ann Rice's husband answered the door, and Sergeant Wilson asked if anyone at the house owned a white Chevy SUV. Husband said yes, and stated that Rice had probably been driving it. Sergeant Wilson asked if Rice was home; the parties dispute how husband responded.[1] Then, the following exchange ensued:

> SERGEANT WILSON: Ok, I'll be honest with you. I'm following up on a traffic complaint. Ok? I have reason to believe that the vehicle's here. OK? Somebody who just called watched the vehicle arrive home. So, is that correct or is that not correct? If you're lying to me.
>
> HUSBAND: I, I have no knowledge . . . .
>
> SERGEANT WILSON: Hear me out, if you're lying to me, OK, I will charge you criminally with lying to me. Ok, cause this is a criminal investigation right now.

---

[1] The dash-mounted camera in the trooper's vehicle recorded the encounter, which lasted approximately one minute and thirty seconds. Husband's response to Sergeant Wilson's inquiry regarding Rice's whereabouts is muffled in the audio recording.

2

HUSBAND:  Yeah.

SERGEANT WILSON:  Is she home or is she not?

HUSBAND:  She is not home.

SERGEANT WILSON:  Ok.  Ok.  Is the car in the garage?

HUSBAND:  I don't know [voice fades . . . go check right now . . . unintelligible].

SERGEANT WILSON: Can we, can we OK what, what is your wife's name?

HUSBAND: Becky.

SERGEANT WILSON:  Ok.  Can we take a look and see if the car is in the garage?  I need to see if there is damage to it.

HUSBAND:  Oh, sure.

SERGEANT WILSON:  OK, can I come in with you?

HUSBAND:  Yeah.

SERGEANT WILSON:  Ok.

Husband led Sergeant Wilson through the house and into the attached garage, where they found the SUV and Rice slumped over in the driver's seat.  Sergeant Wilson arrested Rice for driving while under the influence of alcohol.

Rice moved to suppress the evidence obtained from the garage on the grounds that husband's consent to the search was not voluntary.  The district court granted Rice's motion, finding that Sergeant Wilson's threat to charge husband with a crime was coercive and that Sergeant Wilson obtained husband's consent only in response to the threat of potential arrest.  The state appeals.

3

**D E C I S I O N**

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures and, with few exceptions, warrantless searches are unreasonable. U.S. Const. amend. IV; Minn. Const. art. I, § 10; *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). But a warrant is not necessary if a person voluntarily consents to a requested search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The state bears the burden of demonstrating consent was voluntarily given. *State v. Lussier*, 770 N.W.2d 581, 586 (Minn. App. 2009), *review denied* (Minn. Nov. 17, 2009). Whether consent is voluntary under the totality of the circumstances is a question of fact, which we review for clear error. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992).[2] Findings of fact are clearly erroneous if "we are left with the definite and firm conviction that a mistake occurred." *State v. Diede*, 795 N.W.2d 836, 846-47 (Minn. 2011).[3] If there is reasonable evidence to support the district court's findings, we will not disturb them. *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012).

---

[2] It is undisputed that husband had authority to consent to a search because he resided with Rice on the date in question. *See State v. Hummel*, 483 N.W.2d 68, 73 (Minn. 1992) (finding that a third party who possesses common authority over the premises may consent to a search).

[3] To prevail in a pretrial appeal, the state must clearly and unequivocally show that the district court erred "and that the error, unless reversed, will have a critical impact on the outcome of the prosecution." *State v. Gradishar*, 765 N.W.2d 901, 902 (Minn. App. 2009) (quotation omitted). Critical impact is shown "where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Ault*, 478 N.W.2d 797, 799 (Minn. 1991). Respondent does not dispute that this requirement is satisfied. Because the district court's ruling reduces the likelihood of a successful prosecution, we agree the critical-impact requirement is met.

The totality of the circumstances includes "the nature of the encounter, the kind of person the [consenter] is, and what was said and how it was said." *State v. Dezso*, 512 N.W.2d 877, 880-81 (Minn. 1994) (holding consent to search wallet was not voluntary where officer stopped defendant's vehicle on a highway at night, leaned over the defendant to look into his wallet, persistently questioned defendant about contents of his wallet, and did not tell defendant he had the right to refuse to consent). Consent is voluntary if "a reasonable person would have felt free to decline the officer['s] requests or otherwise terminate the encounter." *Id.* at 880 (alteration in original) (quotation omitted); *see also State v. Harris*, 590 N.W.2d 90, 103 (Minn. 1999) (holding that consent to search defendant was voluntary where two plainclothes officers entered a bus, announced their intention to question all passengers, told defendant that search was consensual, and asked to search him and his bag, because defendant unequivocally gave permission for the search, assisted in the search, and was aware the encounter was consensual). But "[m]ere acquiescence on a claim of police authority or submission in the face of a show of force" is not voluntary consent. *State v. Howard*, 373 N.W.2d 596, 599 (Minn. 1985); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 93 S. Ct. 2041, 2047 (1973) (stating that a person is coerced when "his will has been overborne and his capacity for self-determination critically impaired" (quotation omitted)); *Dezso*, 512 N.W.2d at 880 ("[I]t is at the point when an encounter becomes coercive, when the right to say no to a search is compromised by a show of official authority, that the Fourth Amendment intervenes.").

The state contends that the district court clearly erred by finding husband's consent to the search was coerced, arguing that Sergeant Wilson's conduct was reasonable because he did not threaten to charge husband with a crime for refusing to permit a search or overtly assert his authority as an officer. We are not persuaded. First, the record supports the district court's finding that husband consented to the search only in response to the threat of potential arrest. The recording reveals that the request to search came within 15 seconds of Sergeant Wilson's two references to husband's possible lying and threat to criminally charge husband if he was doing so. Husband testified: "I felt that if I did not let him in and if something did happen to [Rice] that I would be charged with . . . obstructing his investigation." Husband was not told that he could withhold consent and stated that he let Sergeant Wilson in the garage because he felt that he would otherwise be arrested.

Second, while Sergeant Wilson did not brandish his weapon during the brief discussion, the record shows that he did assert his authority. Sergeant Wilson was in uniform and carried a gun. He twice asked husband if he could enter the garage to look for Rice's vehicle. *Cf. State v. George*, 557 N.W.2d 575, 581 (Minn. 1997) (concluding consent was involuntary where repeated questioning by two troopers created "intimidating circumstances" that led the defendant to acquiesce to police authority); *Diede*, 795 N.W.2d at 847-48 (concluding that defendant did not voluntarily consent to search when she initially refused to consent but acquiesced to search after multiple, persistent requests from officers). And the officer's language, although respectful, was persistent and authoritative during the encounter. *Cf. Dezso*, 512 N.W.2d at 881 (finding

6

consent involuntary when given in response to officer's "official and persistent" questioning despite fact that questions were couched in nonauthoritative language). In short, the circumstances of this encounter support the district court's determination that Sergeant Wilson was "overly zealous in the execution of his duties," such that husband did not perceive that he could refuse the requested search.

The district court acknowledged that this is a close case, and was troubled by the discrepancy between the recording and Sergeant Wilson's testimony about whether husband told Sergeant Wilson that Rice was home. But ultimately, the district court carefully reviewed the evidence, expressly evaluated the testimony of the witnesses, and found that "the totality of the circumstances make clear that Mr. Rice's acquiescence to the search was obtained only in response to the threat of potential arrest." We defer to a district court's credibility determinations. *See Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013). And the fact that the record may support different findings does not mean that a district court's finding is clearly erroneous. *See Robinson v. State*, 567 N.W.2d 491, 495 (Minn. 1997) (holding that factual finding on "conflicting testimony" was not clearly erroneous).

On this record, we conclude that the district court did not clearly err by finding that husband's consent to the search of his home was not voluntary. Accordingly, the district court did not err by suppressing the evidence.

**Affirmed.**

7