*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0914**

Tescil Romalis Mason-Kimmons, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 25, 2024
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-17-30036

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

This appeal follows a remand for an evidentiary hearing on the prejudice prong of appellant's ineffective-assistance-of-counsel challenge to his second-degree murder

conviction following a guilty plea. The district court denied appellant's postconviction petition and newly asserted motion to correct his sentence. Appellant challenges both decisions, arguing that the district court abused its discretion by (1) determining that it is unlikely he would have insisted on a trial on his pending first-degree murder charge but for his attorney's deficient advice to plead guilty to second-degree murder and (2) declining to correct his sentence despite the fact that the criminal-history score calculated for him at the time of sentencing is incorrect. We affirm.

**FACTS**

In late 2017, appellant Tescil Romalis Mason-Kimmons was charged with second-degree intentional murder based on allegations that he shot and killed J.R.L., with the aid of his then-girlfriend Elana Rose Danowit. In March 2018, a grand jury indicted Mason-Kimmons and Danowit on charges of first-degree premeditated murder, and Mason-Kimmons on a charge of unlawful possession of ammunition. Following the indictment, Mason-Kimmons discharged his public defender and retained private counsel. Trial was set for August 13.

At the end of May, defense counsel requested a trial continuance, noting that he was experiencing difficulties contacting witnesses, had several other trials over the summer, and needed time to review the state's voluminous discovery disclosures. The district court denied the request. Defense counsel again sought a continuance in early August, reiterating concerns about locating witnesses and reviewing discovery and asserting that he was unprepared for trial. After an August 9 hearing, the district court denied the request. And

when counsel repeated his continuance request four days later, on the day of trial, the district court again denied the request.

Before proceeding with jury selection, the district court recessed for the parties to discuss a potential resolution. About 90 minutes later, the parties announced that they had reached an agreement. Mason-Kimmons pleaded guilty to an amended charge of second-degree murder in exchange for the state's agreement to (1) dismiss other charges against him, including charges pending in two separate cases; (2) a sentence of 366 months' imprisonment; and (3) a probationary sentence for Danowit. The district court accepted Mason-Kimmons's guilty plea and imposed the agreed-to 366-month sentence.

Mason-Kimmons filed a direct appeal, then obtained a stay to pursue postconviction relief. His postconviction petition asserted that his guilty plea was involuntary because (1) his attorney was unprepared because the district court denied his continuance requests, (2) the district court failed to inquire into the state's leniency promise toward Danowit, and (3) his attorney was ineffective under the two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). The district court denied the petition without an evidentiary hearing.[1] After reinstating the appeal, we rejected Mason-Kimmons's first two claims of involuntariness but concluded that he made a prima facie showing that his lawyer provided ineffective assistance and that Mason-Kimmons "would not have pleaded guilty but for that deficiency." *State v. Mason-Kimmons*, No. A18-2145, 2020 WL 2517067, at

---

[1] The same judge presided over all proceedings pertinent to this appeal.

3

*4-8 (Minn. App. May 18, 2020) (*Mason-Kimmons I*). Accordingly, we reversed and remanded for an evidentiary hearing. *Id.* at *7-8.

On remand, the district court received testimony from defense counsel and Mason-Kimmons. Both stated that Mason-Kimmons wanted to go to trial but defense counsel was stymied in his preparations so Mason-Kimmons pleaded guilty rather than proceeding with a lawyer who said he was not ready. Mason-Kimmons also presented a defense investigator's summaries of his witness interviews. The district court rejected Mason-Kimmons's ineffective-assistance claim, reasoning that he failed to show that defense counsel's investigation was objectively inadequate or that "the outcome in his trial" would have been different absent the claimed deficiencies in counsel's performance.

Mason-Kimmons appealed, and we again reversed. *State v. Mason-Kimmons*, No. A21-0696, 2022 WL 589257, at *1 (Minn. App. Feb. 28, 2022) (*Mason-Kimmons II*). We concluded that the district court erred by addressing only the sufficiency of counsel's preparation, not "whether counsel's specific advice to Mason-Kimmons to plead guilty on the basis of counsel's own lack of preparation fell below an objective standard of reasonableness." *Id.* at *4. The state conceded and we held that advising a defendant to plead guilty on that basis "falls below an objective standard of reasonableness." *Id.* We further concluded that the district court applied the incorrect prejudice standard by considering whether "the outcome of a trial would have been different had his case actually proceeded to trial," rather than the standard applicable when a defendant pleads guilty— whether the defendant would have pleaded not guilty and insisted on a trial but for counsel's unreasonable advice. *Id.* at *5 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

4

We remanded for the district court to "set forth its findings with respect to the credited evidence as to the reasons Mason-Kimmons accepted the state's plea offer, as well as any other relevant findings of fact" and to apply the correct prejudice standard. *Id.* at \*6.

On remand, the district court conducted another evidentiary hearing. A prosecutor who worked on Mason-Kimmons's case testified as to the state's evidence against Mason-Kimmons and the nature of the plea negotiations. Mason-Kimmons and defense counsel both testified again. Mason-Kimmons said that he "was trying to go to trial the whole time," only "consider[ed] taking a plea" after counsel said on August 9 that he was unprepared, and would have gone to trial if counsel had indicated he was "ready to go." Mason-Kimmons also presented the testimony of a defense investigator, who described witness statements secured since 2018. And he presented the testimony of his former jail mate, who testified that he lied when he told investigators in 2018 that Mason-Kimmons admitted his motive for killing J.R.L. and details about the scene of the murder. But the jail mate acknowledged that he "possibly" would have testified consistent with his 2018 statements if called as a trial witness.

Mason-Kimmons also moved the district court to correct his sentence, arguing that his sentence was based on a criminal-history score of 7 but his score should be 4 because a 2019 change to the sentencing guidelines applies to his not-yet-final conviction.

The district court denied Mason-Kimmons's postconviction petition, determining he was not prejudiced by his lawyer's objectively unreasonable advice because: (1) counsel had ample opportunity to prepare and had not mustered a particularly strong defense; (2) evidence produced since the guilty plea does not change the nature of the case at the

5

time of the plea; (3) pretrial rulings issued on August 9 did not go in his favor; (4) his guilty plea secured a shorter sentence, dismissal of other charges, and leniency for Danowit; and (5) the state had a strong case against him. The court reasoned that if counsel had not advised Mason-Kimmons to plead guilty because he was unprepared but "instead had a frank conversation about the merits of his defense, as it existed," Mason-Kimmons would have known that "his likelihood of success at trial was low" and "likely would have, like many defendants do, sought the best possible offer" and pleaded guilty. The district court also denied Mason-Kimmons's sentence-correction motion, concluding that Mason-Kimmons's sentence is not subject to correction because his agreed-to specific sentence—366 months—is within the presumptive guidelines range that applies to his corrected criminal-history score.

Mason-Kimmons appeals.

## DECISION

I. **The district court did not abuse its discretion by denying postconviction relief because Mason-Kimmons failed to demonstrate that his counsel's deficient performance prejudiced him.**

The *Strickland* standard for assessing claims of ineffective assistance of counsel involves mixed questions of law and fact. *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017). We review "findings of fact made during the course of deciding an ineffective-assistance claim" for clear error. *Pearson v. State*, 891 N.W.2d 590, 600 (Minn. 2017); *see also Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013) (requiring deference to credibility determinations). Findings of fact are clearly erroneous if "we have a definite and firm conviction that a mistake has been made." *Tscheu v. State*, 829 N.W.2d 400, 403

6

(Minn. 2013) (quotation omitted). But we review the legal implications of the district court's factual findings de novo. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). Ultimately, our role on appeal from a district court's denial of postconviction relief based on ineffective assistance of counsel is to "consider the court's factual findings that are supported in the record [and] conduct a de novo review of the legal implication of those facts on the ineffective assistance claim." *Id.* at 504.

Mason-Kimmons first contends that the district court clearly erred by finding that (1) he was motivated to plead guilty on the day of trial because the court made several unfavorable evidentiary rulings four days earlier; and (2) he began negotiating a plea agreement "*before* [defense counsel's] declaration of unpreparedness." We agree. The record confirms that during the August 9 hearing, the court denied Mason-Kimmons's continuance motion but deferred ruling on his evidentiary motions, and defense counsel repeatedly expressed that he was unprepared for trial. Thereafter, Mason-Kimmons began the plea negotiations that culminated on August 13. Indeed, the state acknowledges that "a formal ruling had not been made" on Mason-Kimmons's evidentiary motions before plea negotiations began. The district court clearly erred by finding that unfavorable pretrial rulings motivated Mason-Kimmons to plead guilty and that he began negotiating a guilty plea before counsel declared himself unprepared for trial. But as further discussed below, these errors are not determinative.

Mason-Kimmons next argues that the district court committed legal error by considering the extent of defense counsel's preparedness in its prejudice analysis and by

applying a preponderance standard rather than the required reasonable-probability standard. Neither argument persuades us to reverse.

First, Mason-Kimmons's contention that his lawyer's lack of preparation is largely irrelevant to prejudice in the guilty-plea context is unavailing.[2] The district court was required to determine whether there is a reasonable probability that, but for counsel's deficient advice, Mason-Kimmons would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. This inquiry "focuses on the defendant's decisionmaking," as reflected in "contemporaneous evidence" of the defendant's preferences. *Lee v. United States*, 582 U.S. 357, 367, 369 (2017). A defendant's decision whether to plead guilty "may not turn solely on the likelihood of conviction after trial," but it is a key factor: "[D]efendants obviously weigh their prospects at trial in deciding whether to accept a plea," and a defendant with "no plausible chance of an acquittal at trial" is "highly likely" to accept a plea agreement. *Id.* at 367.

The district court applied this standard, weighing both the state's evidence against Mason-Kimmons and defense counsel's prospects for countering it, including the fact that defense counsel was an experienced attorney "well-versed in the facts of the case" who was unable, despite months of trying, to secure all of the witnesses he hoped to. In other words, the district court correctly evaluated not whether counsel should or could have been

---

[2] Mason-Kimmons also argues that he need not demonstrate prejudice because counsel's deficient advice deprived him of the right to choose whether to plead guilty, amounting to structural error. He presented this argument to this court in his second appeal, and we implicitly but definitively rejected it by holding that the district court was required to assess prejudice. *Mason-Kimmons II*, 2022 WL 589257, at *5-6. That holding is the law of this case. *See Lynch v. State*, 749 N.W.2d 318, 321 (Minn. 2008).

8

better prepared with more time, but what counsel's level of preparation in August 2018 meant for the likelihood of a conviction after trial and, by extension, Mason-Kimmons's likely willingness to accept a plea agreement.

Second, the record defeats Mason-Kimmons's assertion that the district court applied the wrong legal standard. He acknowledges that the district court recited the correct reasonable-probability standard multiple times in its order, but contends the court's references to whether it was "likely" that Mason-Kimmons would have gone to trial show that it actually applied a preponderance standard. But "use of the unadorned word 'probably' is permissible shorthand when the complete [reasonable-probability] standard is elsewhere recited." *Holland v. Jackson*, 542 U.S. 649, 655 (2004) (per curiam) (quotation omitted); *see also Peltier v. State*, 946 N.W.2d 369, 373 (Minn. 2020) (concluding no error in application of reasonable-probability standard when district court determined outcome would "not probably" have been different). Because the district court's thorough and reflective order shows that the court understood and applied the reasonable-probability standard articulated in *Hill*, we discern no error in its occasional use of the unadorned word "likely" as a shorthand.

Moreover, we are not bound by the district court's assessment of reasonable probability but conduct our own analysis of the legal implications of the established facts. *See Nicks*, 831 N.W.2d at 504. After accounting for the factual errors discussed above, the established facts are as follows.

The state had a strong, albeit circumstantial, case against Mason-Kimmons for first-degree premeditated murder. This included surveillance videos and witness descriptions

9

of a man in a blue hooded sweatshirt who matched Mason-Kimmons's general description—a Black man around six feet tall—appearing at the scene of the shooting with Danowit, shooting J.R.L., and leaving with Danowit; evidence that, three days before the shooting, Mason-Kimmons was arrested for assaulting J.R.L. with a knife and told Danowit over the phone that he would kill J.R.L. once he got out of jail; evidence that a police search of Mason-Kimmons and Danowit's shared apartment revealed a blue hooded sweatshirt and ammunition consistent with the type of gun used to shoot J.R.L.; evidence that Mason-Kimmons acknowledged to a jail mate his motive for killing J.R.L. and details about the scene of the murder; and evidence that Mason-Kimmons acquired a gun shortly before the shooting.

In contrast, Mason-Kimmons did not have a particularly strong defense. His defense was primarily that the state's case is circumstantial—no positive witness identification, no gun—and that he is physically distinguishable from the shooter in terms of height, build, and complexion. But while eyewitness testimony that a "tall," "lanky," dark-skinned man shot J.R.L. would tend to distinguish the shooter from Mason-Kimmons, who is five feet, ten inches tall, with a lighter complexion and a self-described "chubby" build, defense counsel (like the prosecutor) had difficulty securing eyewitnesses and lacked any reliable witnesses to present this description to the jury. Similarly, while the surveillance footage suggests a shooter with a slimmer build than that of Mason-Kimmons, the cameras were located far enough away from where the shooting occurred that the exculpatory value of the footage is questionable. In short, the minimal available evidence

10

tending to distinguish Mason-Kimmons visually from the shooter does little to counter the state's strong circumstantial evidence.

Had Mason-Kimmons proceeded to trial, this evidentiary landscape points to a likely guilty verdict—and with it, a mandatory sentence of life imprisonment without the possibility of release. By pleading guilty, Mason-Kimmons secured a shorter prison sentence of 366 months. *See Lee*, 582 U.S. at 367 (stating that decision whether to plead guilty includes consideration of "the respective consequences of a conviction after trial and by plea"). And he obtained various additional benefits from pleading guilty, including a dismissal of several other charges against him and the offer of a probationary sentence for Danowit. Indeed, the record reflects that leniency for Danowit was Mason-Kimmons's principal focus during plea negotiations; he never negotiated the length of his sentence.

Viewing these facts together, we are convinced that there is no reasonable probability that, but for counsel's deficient advice, Mason-Kimmons would still have insisted on going to trial and facing the very real possibility of a conviction on his first-degree murder charge, rather than securing the sentencing and other benefits of pleading guilty to the lesser charge. Accordingly, we discern no abuse of discretion by the district court in denying Mason-Kimmons's postconviction petition.

## II. The district court did not abuse its discretion by denying Mason-Kimmons's motion to correct his sentence.

"A sentence based on an incorrect criminal-history score is an illegal sentence that may be corrected at any time." *State v. Woods*, 945 N.W.2d 414, 416 (Minn. App. 2020); *see* Minn. R. Crim. P. 27.03, subd. 9. This is true even if the sentence falls within the

presumptive sentencing range for the correct criminal-history score "because the sentencing guidelines serve as the anchor for a district court's discretion at sentencing, [so] when a guidelines range moves up or down, offenders' sentences tend to move with it." *State v. Provost*, 901 N.W.2d 199, 201-02 (Minn. App. 2017) (quotation omitted).

We review a district court's denial of a motion to correct a sentence for an abuse of discretion. *Evans v. State*, 880 N.W.2d 357, 359 (Minn. 2016). A district court abuses its discretion if it bases its ruling on an erroneous view of the law or makes unsupported factual findings. *Pearson*, 891 N.W.2d at 596. We review interpretation of the sentencing guidelines de novo. *State v. Strobel*, 932 N.W.2d 303, 306 (Minn. 2019). But we review factual findings related to sentencing for clear error. *State v. Roy*, 928 N.W.2d 341, 344 (Minn. 2019).

Mason-Kimmons argues that he is entitled to resentencing under *Provost* because his sentence is based on an incorrect criminal-history score. But *Provost* does not apply when the defendant's sentence is not based on discretionary application of the sentencing guidelines but is a "bargained-for" part of a plea agreement. *Provost*, 901 N.W.2d at 202 n.1. Precisely what sentence was bargained for as part of the plea agreement "is a factual inquiry for the [district] court to resolve." *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004).

The district court found that the parties agreed to a sentence of 366 months' imprisonment, not one "in accordance with" a criminal-history score of 7. The record supports that finding. The prosecutor explained at the guilty-plea hearing that the parties arrived at 366 months because it represented the bottom of the presumptive sentencing

12

range for a criminal-history score of 7. But this reference to the criminal-history score as an anchor for the presumptive sentencing range is unremarkable, as bargained-for sentences generally must fall within the presumptive sentencing range. *See State v. Rourke*, 773 N.W.2d 913, 919 (Minn. 2009) (stating that, generally, "the maximum sentence authorized by a guilty plea . . . is the top of the presumptive sentencing range"). All other references to the sentence focus specifically on its length. The guilty-plea petition says only "maximum sentence 366 months." And the prosecutor referenced this language and clarified that 366 months was not a maximum or a cap but "the agreed upon prison sentence." Defense counsel and Mason-Kimmons agreed with that description. On this record, the district court's finding that Mason-Kimmons agreed specifically to a 366-month sentence is not clearly erroneous. And it is undisputed that a sentence of 366 months' imprisonment falls within the presumptive sentencing range (329 to 463 months) based on Mason-Kimmons's corrected criminal-history score of 4. *See* Minn. Sent'g Guidelines 4.A (2022). Accordingly, we see no abuse of discretion in the district court's decision not to disturb Mason-Kimmons's bargained-for sentence.

**Affirmed.**