Larry Demetrius PEARSON, Appellant,

v.

STATE of Minnesota, Respondent.

A16-0882

Supreme Court of Minnesota.

Filed: 03/22/2017

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inver Grove Heights, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and, John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, Saint Paul, Minnesota, for respondent.

## OPINION

CHUTICH, Justice.

In this first-degree murder case, appellant Larry Pearson appeals from the denial of his second petition for postconviction relief. At issue is whether the postconviction court abused its discretion when it denied Pearson's request for a new trial based on a claim of newly discovered evidence and denied his postconviction claims asserting ineffective assistance of counsel. Because the court did not abuse its discretion in doing so, we affirm.

## FACTS

The State charged Pearson with first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2016); second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2016); and the unlawful possession of a firearm, Minn. Stat. § 624.713, subd. 1 (2006), in connection with the shooting death of Corodarl Merriman.[1] Pearson pleaded not guilty on all counts.

At trial, the State presented the following evidence. On April 22, 2006, Merriman and W.M. drove a van to Pearson's apartment building to purchase controlled substances from Pearson. When they arrived, Pearson told W.M., the van's driver, to step out of the van. W.M. followed his instructions, leaving Merriman in the front passenger seat. When W.M. asked to see the drugs, Pearson pulled out a gun and

---

1. The State also charged Pearson with second-degree attempted murder of W.M., but the jury found him not guilty on the attempted murder count.

fired a shot at W.M.'s head. The bullet missed and W.M. retreated toward an alley. Pearson approached the van and began shooting. As Merriman attempted to move from the front passenger seat to the back of the van, Pearson fired one shot into the van's front passenger window, breaking it. Pearson then opened the front passenger door of the van, kneeled over the seat, and fatally shot Merriman. According to the assistant medical examiner, Merriman's death was caused by multiple gunshot wounds. She opined that the gunshot wound to Merriman's right thigh was consistent with a bullet that traveled through the front passenger window, striking Merriman while he was sitting in the front passenger seat.[2] When the prosecutor asked W.M. whether Merriman was "ever in trouble," W.M. replied: "No. He was basically a peacemaker. I mean, he had his, you know, problems, but he was a peacemaker."

Pearson chose to testify. He told the jurors that W.M. told him to get in the passenger seat of the van. Once inside the van, Pearson saw that W.M. had a baseball bat. W.M. told Pearson, "[Y]ou know what it is," at which point, Merriman, who was seated in the rear of the van, pulled out a gun. Pearson retrieved his own gun from the front right pocket of his jeans and shot Merriman in the leg. W.M. then ran away from the van. Pearson tried to follow W.M. out the driver's side of the van, but Merriman pulled Pearson's arm toward him so Pearson shot Merriman a second time. Pearson testified that after shooting Merriman the second time, Merriman again pulled him into the back of the van, at which point Pearson shot Merriman a third time.

The jury found Pearson guilty of first-degree premeditated murder and unlawful possession of a firearm. The district court sentenced him to life in prison without the possibility of release for the first-degree premeditated murder conviction and, concurrently, to 60 months for the unlawful possession of a firearm conviction.

Pearson filed a direct appeal, which was stayed to allow him to pursue postconviction relief. In his first petition for postconviction relief, Pearson argued, among other things, that his trial counsel was ineffective in her cross-examination of W.M. Specifically, Pearson argued that after W.M. testified that Merriman was a peacemaker, trial counsel should have asked W.M. if he was aware of prior bad acts that Merriman committed as a juvenile. The postconviction court denied Pearson's petition. In a consolidated appeal, we affirmed Pearson's convictions and the denial of his first postconviction petition. *State v. Pearson*, 775 N.W.2d 155, 158 (Minn. 2009). We explained in part that Pearson's claim of ineffective assistance of trial counsel failed because the decision not to cross-examine W.M. involved unreviewable trial strategy. *Id.* at 165.

In December 2014, Pearson filed a second petition for postconviction relief in which he raised three primary claims.[3] First, he alleged that newly discovered evidence existed in the form of an affidavit signed by J.B., who claimed he witnessed the shooting.[4] Second, Pearson alleged that trial counsel was ineffective when she ad-

---

2. The assistant medical examiner also testified that this wound was inconsistent with any position other than being seated.

3. Pearson twice amended his second petition for postconviction relief. We refer to the petition and amendments together when discussing Pearson's second postconviction petition.

4. Pearson is the uncle of J.B.'s child, whose mother is Pearson's sister.

vised him to decline a plea offer for second-degree murder. Third, he alleged that he received ineffective assistance from the attorney who represented him in his first postconviction proceeding. According to Pearson, postconviction counsel was ineffective in (1) failing to call W.M. to establish a claim of ineffective assistance of trial counsel and (2) advising Pearson to withdraw a conflict of interest claim against his trial attorney.[5] Although the State agreed that the postconviction court should hold an evidentiary hearing on the newly discovered evidence claim, it argued that the claims for ineffective assistance of counsel not only lacked merit but also were barred by Minnesota Statutes § 590.01, subd. 4(a), (c) (2016), and *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737, 741 (1976).

The postconviction court summarily denied Pearson's claims of ineffective assistance of counsel and scheduled an evidentiary hearing on the claim of newly discovered evidence. At the evidentiary hearing, J.B. testified as follows. He has a child with Pearson's sister and also helped raise her older child from a very young age.[6] He also was in prison with Pearson in the Oak Park Heights Correctional Facility at various times before November 2014. Although J.B. never saw the court files, briefs, or other materials relating to Pearson's direct appeal or first petition for postconviction relief, he did see our opinion on the matter. In

July 2015, nine years after the shooting and almost six years after our opinion was filed in Pearson's first appeal, J.B. signed an affidavit alleging that he witnessed the shooting.

According to J.B., a tan van with two occupants backed into a parking spot outside Pearson's apartment building. J.B., who was at an apartment in the same building with Pearson's sister, testified that he heard the driver call Pearson to the van and saw Pearson enter its front passenger side. J.B. could not hear anything that occurred inside the van, but he did see the van "rock" a minute or two after Pearson entered. J.B. provided inconsistent descriptions of the timing of the gunshots. For example, J.B. testified that he heard only "one gunshot" before W.M. exited the van but that he saw "several flashes inside the van" over the same period. J.B. admitted that he never saw Pearson, W.M., or Merriman with a gun. After the shooting, J.B. went inside and told Pearson's sister what he saw. J.B. admitted that shortly after the shooting, he spoke with the police and told them that he did not see anything and that he was somewhere else when the shooting occurred. J.B. claimed that he lied to the police because he did not want to be involved.

The postconviction court found J.B.'s testimony to be doubtful for several rea-

---

**5.** Pearson also alleged that postconviction counsel was ineffective when she failed to argue that Pearson's conviction for second-degree murder should be vacated. Although the transcript confirmed that Pearson was convicted and sentenced only on count 1, for first-degree murder, the district court record contained a clerical error showing that Pearson was convicted of first-degree murder and the lesser-included offense of second-degree murder. *See* Minn. Stat. § 609.04 (2016) ("Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both."). Thus,

although the jury found Pearson guilty of second-degree murder, the postconviction court ordered correction of this clerical error to reflect the actual conviction made by the trial judge. *See* Minn. R. Crim. P. 27.03, subd. 10 ("Clerical mistakes in a judgment, order, or in the record arising from oversight or omission may be corrected by the court at any time....")

**6.** Although J.B.'s relationship with Pearson's sister ended in 2007, the two remain in contact.

sons: (1) J.B. admitted prior untruthfulness to police; (2) J.B.'s statement was made nine years after the shooting; (3) J.B. was serving time in the same prison as Pearson when he made the statement; (4) J.B.'s statement was not corroborated by others (including Pearson's sister); and (5) J.B.'s statement was "fuzzy and contradictory" on several important details. Based on these findings, the court concluded that Pearson failed to establish one of the requirements of the newly discovered evidence test set forth in *Rainer v. State,* 566 N.W.2d 692, 695 (Minn. 1997) (explaining that the third requirement of the newly discovered evidence test is that the evidence not be "cumulative, impeaching, or doubtful").[7] The postconviction court therefore denied Pearson's motion for a new trial based on his claim of newly discovered evidence and dismissed his postconviction petition. This appeal followed.

## ANALYSIS

 Pearson contends that the postconviction court abused its discretion when it denied his request for a new trial based on a claim of newly discovered evidence and denied his claims for ineffective assistance of counsel. We review the denial of a petition for postconviction relief for an abuse of discretion. *Erickson v. State,* 842 N.W.2d 314, 318 (Minn. 2014). A postconviction court abuses its discretion when it has "exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Rhodes v. State,* 875 N.W.2d 779, 786 (Minn. 2016) (quoting *Brown v. State,* 863 N.W.2d 781, 786 (Minn. 2015)). Legal issues are reviewed de novo, but our review of factual issues "is limited to whether

there is sufficient evidence in the record to sustain the postconviction court's findings." *Matakis v. State,* 862 N.W.2d 33, 36 (Minn. 2015) (quoting *Vance v. State,* 752 N.W.2d 509, 512 (Minn. 2008)). Put differently, "[w]e do not reverse the postconviction court's findings unless they are clearly erroneous." *Carridine v. State,* 867 N.W.2d 488, 496 (Minn. 2015).

### I.

 We first address Pearson's contention that the postconviction court abused its discretion when it denied his request for a new trial based on a claim of newly discovered evidence.

[T]o [obtain] a new trial based upon newly discovered evidence, a defendant must prove the following: (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; *and* (4) that the evidence would probably produce an acquittal or a more favorable result.

*Rainer,* 566 N.W.2d at 695 (emphasis added). Because the requirements of the *Rainer* test are stated in the conjunctive, Pearson must satisfy all four. *Miles v. State,* 840 N.W.2d 195, 201 (Minn. 2013).

 Pearson contends that the record does not support the postconviction court's finding that J.B.'s testimony was doubtful. According to Pearson, J.B.'s testimony is compatible with the physical evidence and any inconsistencies in his testimony are immaterial. Whether the newly discovered evidence is doubtful is a question of fact.

---

**7.** The postconviction court also found that J.B.'s testimony failed to satisfy several of the other requirements of the newly discovered evidence test, including the fourth one, which requires a defendant to prove that the evidence would probably produce an acquittal or a more favorable result if the court ordered a new trial. *Rainer,* 566 N.W.2d at 695.

*See Carridine,* 867 N.W.2d at 497 (applying the clearly erroneous standard to the postconviction court's credibility findings); *Doppler v. State,* 771 N.W.2d 867, 875 (Minn. 2009) (same).

After carefully reviewing the record from the evidentiary hearing, we conclude that the postconviction court's finding that J.B.'s testimony was doubtful is not clearly erroneous. J.B. initially told the police that he did not witness the shooting. Nine years later, after serving time in the same prison as Pearson, J.B. claimed that he witnessed the shooting. J.B.'s statement is not corroborated by others (including Pearson's sister) and his statement was, as the postconviction court put it, "fuzzy and contradictory" on several important details. Finally, J.B.'s testimony did not account for the shattered van window. Because the record supports the postconviction court's finding that J.B.'s testimony was doubtful, the court did not abuse its discretion when it denied Pearson's request for a new trial based on a claim of newly discovered evidence.

## II.

We next address Pearson's contention that the postconviction court abused its discretion when it summarily denied his claim that trial counsel was ineffective when she advised him to reject a plea offer for second-degree murder because she believed that the State could not prove the element of premeditation. According to the State, the postconviction court did not abuse its discretion in summarily denying this claim because Pearson's claim is procedurally barred by *Knaffla,* 243 N.W.2d at 741.

A postconviction court need not conduct an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to entitle him to the requested relief. *Bobo v. State,* 820 N.W.2d

511, 516 (Minn. 2012); *see* Minn. Stat. § 590.04, subd. 1 (2016). Accordingly, a postconviction court may summarily deny a claim that is procedurally barred by the *Knaffla* rule. *Colbert v. State,* 870 N.W.2d 616, 622 (Minn. 2015). Under the *Knaffla* rule, "once a direct appeal has been taken, all claims raised in the direct appeal and all claims that were known or should have been known but were not raised in the direct appeal are procedurally barred." *Id.* at 626 (emphasis omitted) (citing *Black v. State,* 560 N.W.2d 83, 85 (Minn. 1997)). A claim of ineffective assistance of trial counsel that cannot be decided on the district court record because it requires additional evidence, however, need not be brought on direct appeal and may be brought in a postconviction petition. *Torres v. State,* 688 N.W.2d 569, 572 (Minn. 2004). But if such a claim could have been raised in a previous postconviction petition, the *Knaffla* rule bars consideration of the claim in a subsequent petition for postconviction relief. *Williams v. State,* 869 N.W.2d 316, 318 (Minn. 2015).

Here, Pearson knew or should have known about his claim of ineffective assistance of trial counsel based on rejection of the plea offer no later than May 23, 2007, when the jury returned a guilty verdict on the charge of first-degree premeditated murder. Thus, even if the claim could not have been decided on the trial court record, the *Knaffla* rule still applies because Pearson failed to raise this claim in his first petition for postconviction relief.

Having concluded that the *Knaffla* rule bars Pearson's claim that trial counsel was ineffective, we next consider whether Pearson's failure to raise the claim in an earlier proceeding should be excused under one of the two exceptions to the *Knaffla* rule. Under the first exception, a defendant's failure to raise a claim may be excused when the claim is "so novel that

the legal basis was not available" in the earlier proceeding. *Buggs v. State*, 734 N.W.2d 272, 274 (Minn. 2007). Under the second exception, a defendant's failure to raise a claim may be excused when the claim has substantive merit and the petitioner did not deliberately and inexcusably fail to raise the claim in a prior proceeding. *Deegan v. State*, 711 N.W.2d 89, 94 (Minn. 2006). Pearson contends that his claim of ineffective assistance of trial counsel satisfies both exceptions.

Pearson first argues that when he filed his first postconviction petition, no legal basis existed for his claim of ineffective assistance of counsel. Specifically, he asserts that he did not have the benefit of *Lafler v. Cooper*, in which the United States Supreme Court said, "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *see also Missouri v. Frye*, 566 U.S. 133, 148-49, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).[8] We disagree with Pearson's argument.

Although Pearson did not have the benefit of *Lafler* and *Frye* when he filed his first postconviction petition, he did have available to him the United States Supreme Court's decision in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and our decision in *State v. Powell*, 578 N.W.2d 727 (Minn. 1998). In *Hill*, the Supreme Court explained that its decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (establishing a two-prong test for ineffective assistance claims) is "applicable to ineffective-assistance claims arising out of the plea process." 474 U.S. at 57, 106 S.Ct.

366. And, in *Powell*, we used a *Strickland* analysis when considering the defendant's claim that trial counsel was ineffective during plea negotiations. 578 N.W.2d at 731-33. In light of *Hill* and *Powell*, Pearson's claim of ineffective assistance of trial counsel in the context of plea negotiation is not so novel that the legal basis for this claim was unavailable to him earlier.

Pearson next argues that his claim of ineffective assistance of trial counsel satisfies the second exception to the *Knaffla* rule because his claim has substantive merit and he did not deliberately and inexcusably fail to raise the claim in the earlier proceedings. This contention is meritless.

To succeed on the merits of his claim that trial counsel was ineffective when she advised him to reject a plea offer for second-degree murder, Pearson was required to show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lafler*, 566 U.S. at 162-63, 132 S.Ct. 1376 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Under the second requirement, a defendant must demonstrate a "reasonable probability" that the defendant "would have accepted the plea," "the plea offer would have been presented to the court," "the court would have accepted its terms," *and* the sentence "under the offer's terms would have been less severe." *Id.* at 164, 132 S.Ct. 1376. Yet, in support of his claim, Pearson simply alleged:

> In or around June, 2006, the state offered Mr. Pearson a deal to plead guilty to second-degree murder, which had a

---

**8.** In *Lafler*, the parties conceded "that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment." 566 U.S. at 160, 132 S.Ct. 1376. In *Frye*, defense counsel did not inform the defendant of a plea offer, and after the offer lapsed, the defendant still pleaded guilty but on more severe terms. 566 U.S. at 148-49, 132 S.Ct. 1399.

maximum penalty of 40 years in prison and have all remaining counts dismissed.... Petitioner's counsel deficiently advised Petitioner that the state could not prove the element of premeditation. Due to counsel's deficient advice, Mr. Pearson elected to go to trial on the first-degree murder charges, was found guilty of that crime, and received a life sentence.

Because Pearson failed to allege any probability, much less a reasonable probability, that he would have accepted the plea agreement and that the district court would have accepted the plea agreement, his claim does not have substantive merit on its face. Moreover, an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance. *See State v. Vang*, 847 N.W.2d 248, 267-68 (Minn. 2014) (concluding that if trial counsel advised Vang to reject the State's plea offer and proceed to trial on a claim of self-defense, the recommendation was not objectively unreasonable when Vang presented evidence that he feared the victim, did not have an opportunity to retreat, and the jury was instructed regarding self-defense).

In sum, Pearson's claim that trial counsel was ineffective when she advised him to reject a plea offer for second-degree murder because she believed that the State could not prove the element of premeditation is procedurally barred. Pearson failed to raise the claim in the earlier proceedings and he has not satisfied either of the exceptions to the *Knaffla* rule.[9] Accordingly, the postconviction court did not abuse its discretion by summarily denying the claim.

### III.

Finally, we consider Pearson's contention that the postconviction court abused its discretion when it summarily denied his claims of ineffective assistance of postconviction counsel. For the reasons that follow, we conclude that the postconviction court did not abuse its discretion because, even if the facts alleged in the petition were proven by a fair preponderance of the evidence, they fail to satisfy the *Strickland* requirements.[10]

Pearson argues that postconviction counsel provided him with ineffective assistance at the first postconviction hearing in two separate ways. First, he asserts that postconviction counsel was ineffective when she failed to call W.M. to testify at the first postconviction hearing. According

9. Because Pearson's claim fails to satisfy either exception to the *Knaffla* rule, we need not decide whether the *Knaffla* exceptions survived the passage of the 2005 amendments to the postconviction statute. *See Nissalke v. State*, 861 N.W.2d 88, 94 n.4 (Minn. 2015) (concluding that "neither *Knaffla* exception applies, [so] we need not address the issue of whether the *Knaffla* exceptions survive the 2005 amendments to Minn. Stat. § 590.01, subd. 1."); *Berkovitz v. State*, 826 N.W.2d 203, 210 n.3 (Minn. 2013) ("We need not, and do not, decide whether the exceptions to the *Knaffla* rule survive the 2005 amendment to the postconviction statute because, regardless of whether the exceptions apply, [petitioner's] claims...are clearly procedurally barred.")

10. When the files and records of a postconviction proceeding conclusively establish that a claim is without merit, we have sometimes affirmed the denial of the claim without deciding whether it is procedurally barred under *Knaffla*, or filed outside the statute of limitations in Minn. Stat. § 590.01, subd. 4(a), (c). *See Munt v. State*, 880 N.W.2d 379, 383 (Minn. 2016) (addressing a claim on the merits without first determining whether the petition was procedurally barred); *Jihad v. State*, 714 N.W.2d 445, 447 (Minn. 2006) (addressing a claim on the merits without first determining whether the petition was untimely filed). We adopt that approach here for Pearson's ineffective-assistance-of-postconviction-counsel claims.

to Pearson, postconviction counsel should have called W.M. to show that trial counsel's failure to cross-examine W.M. during trial about Merriman's prior bad acts (to impeach W.M.'s statement that Merriman was a "peacemaker")was ineffective assistance. Second, Pearson contends that postconviction counsel was ineffective in advising him to withdraw a claim of ineffective assistance of trial counsel that was based on an alleged conflict of interest due to trial counsel's previous representation of Merriman.

To prevail on a claim of ineffective assistance of postconviction counsel that is based on counsel's alleged failure to raise an ineffective assistance of trial counsel claim, a defendant must first establish that trial counsel was ineffective. *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007) ("[B]ecause we conclude that all of Fields' ineffective assistance of trial counsel claims fail, we also conclude that all of Fields' ineffective assistance of appellate counsel claims fail.").Trial counsel is ineffective if her representation fell below an objective standard of reasonableness and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Robertson*, 884 N.W.2d 864, 876-77 (Minn. 2016). In determining whether the defendant has satisfied the prejudice requirement, we consider the totality of the evidence before the jury. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). We need not address both requirements if one is determinative. *Id.*

Although findings of fact made during the course of deciding an ineffective-assistance claim are subject to the clearly erroneous standard, the postconviction court's analysis of the two *Strickland* requirements is subject to de novo review because "the performance and prejudice components of the ineffectiveness inquiry [involve] mixed questions of law and fact." *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052; *see also Rhodes*, 657 N.W.2d at 842 ("As ineffective assistance of counsel claims involve mixed questions of law and fact, our standard of review is *de novo*.").

For the reasons that follow, we conclude that even if the facts alleged in the petition were proven by a fair preponderance of the evidence, they fail to establish that trial counsel was ineffective. Therefore Pearson is entitled to no relief on his claims of ineffective assistance of postconviction counsel.

To show that he was prejudiced by trial counsel's failure to cross-examine W.M. about Merriman's prior bad acts, Pearson alleged that W.M. knew that Merriman had been adjudicated delinquent for several violent offenses, including a robbery in which the victim was shot after Merriman entered the victim's vehicle. According to Pearson, if trial counsel had impeached W.M.'s testimony with evidence regarding Merriman's involvement in this robbery, a reasonable probability exists that the outcome of the trial would have been different.

Based on our review of the totality of the evidence before the jury, we disagree. The physical evidence, including the broken window and the bullet trajectories, completely undermined Pearson's claim of self-defense. Moreover, Pearson's own testimony failed to explain how he was able to retrieve his revolver from the front pocket of his jeans and fire it three separate times, which required him to cock the gun each time before firing, without Merriman being able to fire his gun once—despite Merriman being the first to draw a weapon, according to Pearson.

Given this evidence, we conclude that no reasonable probability exists that the outcome of the trial would have been different had trial counsel cross-examined W.M. about Merriman's prior bad acts. Because

the facts alleged by Pearson fail to establish that he was prejudiced by trial counsel's failure to cross-examine W.M. about Merriman's prior bad acts, Pearson is not entitled to relief on his claim that postconviction counsel was ineffective when she failed to call W.M. as a witness at the first postconviction hearing in support of the underlying claim of ineffective assistance of trial counsel.[11]

■ To demonstrate that trial counsel was ineffective based on an alleged conflict of interest, Pearson asserted that trial counsel represented Merriman in a proceeding in March 2005; trial counsel represented Pearson at the trial for Merriman's murder in which Pearson's strategy was to claim self-defense; the claim of self-defense required counsel to show that Merriman had "a history of violence"; and to show this history, counsel arguably needed to cross-examine W.M. on Merriman's prior bad acts. Even if proven by a preponderance of the evidence, the facts do not demonstrate that trial counsel actively represented conflicting interests; nor do they demonstrate that the supposed conflict adversely affected Pearson's trial counsel's performance.

■ "[T]he *possibility* of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (emphasis added). Generally, "any deficiencies in counsel's performance must be prejudicial ... to constitute ineffective assistance," *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052, but in some contexts, prejudice

is presumed, *id.* For conflicts of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Gustafson v. State*, 477 N.W.2d 709, 713 (Minn. 1991).

To determine whether a lawyer has a conflict of interest, we turn to the Minnesota Rules of Professional Conduct. *See State v. Patterson*, 812 N.W.2d 106, 112 (Minn. 2012) (applying the Minnesota Rules of Professional Conduct to determine whether an attorney had a conflict of interest in a criminal case). To establish that his trial counsel had a conflict of interest, Pearson must show that "a significant risk" existed that his lawyer's representation would be materially limited by the lawyer's responsibilities to a former client. Minn. R. Prof. Conduct 1.7 (stating that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which includes responsibilities to a former client). "A lawyer who has formerly represented a client in a matter ... shall not thereafter: ... use information relating to the representation to the disadvantage of the former client except ... when the information has become generally known." Minn. R. Prof. Conduct 1.9(c)(1).

11. The postconviction court relied on counsel's performance, rather than a lack of prejudice, when it rejected Pearson's claim that postconviction counsel's performance was ineffective. As part of its analysis, the postconviction court observed that in *Pearson*, we said that trial counsel's failure to cross-examine W.M. was trial strategy that we would not second–guess. 775 N.W.2d at 165. Pearson challenges the postconviction court's analysis,

arguing that trial counsel's failure to cross-examine W.M. was not a strategic decision. Having concluded that Pearson has not shown prejudice under *Strickland*, we need not consider whether the postconviction court's conclusion about trial strategy was correct. *See Rhodes*, 657 N.W.2d at 842 (explaining that we need not address both performance and prejudice if one factor is determinative of an ineffective-assistance claim).

Here, trial counsel did not need to use confidential information from her previous representation of Merriman to cross-examine W.M., and her representation of Merriman in 2005 was unrelated to her representation of Pearson in 2007. *See Patterson*, 812 N.W.2d at 112 (concluding that a conflict of interest existed when a prior representation was substantially related to a current representation and that to effectively cross-examine a former-client witness, a substantial risk existed that counsel would use confidential information obtained through the prior representation to materially advance the defense). Moreover, as the postconviction court observed, Merriman's "juvenile record, although confidential, was known to the Defense before trial not by virtue of any confidential information trial counsel received from [Merriman], but was instead contained in a computer printout defense obtained, likely through discovery, prior to the trial." Under the Minnesota Rules of Professional Conduct, the use of such generally known information is permitted. Because the facts alleged by Pearson fail to establish that trial counsel was ineffective based on a conflict of interest, Pearson is not entitled to relief on his claim that postconviction counsel was ineffective when she advised him to withdraw the claim of ineffective assistance of trial counsel. Accordingly, the postconviction court did not abuse its discretion when it summarily denied this claim.

## CONCLUSION

For the foregoing reasons, we affirm the order denying Pearson's second postconviction petition.

Affirmed.