*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-0234**

State of Minnesota,
Respondent,

vs.

James Lockhart Lang,
Appellant.

**Filed April 22, 2024**
**Affirmed**
**Worke, Judge**

Hennepin County District Court
File No. 27-CR-19-6030

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Charles L. Hawkins, Minneapolis, Minnesota (for appellant)

Considered and decided by Frisch, Presiding Judge; Worke, Judge; and Gaïtas, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

Appellant challenges his conviction for aiding and abetting third-degree assault, arguing that the postconviction court abused its discretion by denying his request for relief

based on false and newly discovered evidence. Alternatively, appellant argues that the evidence is insufficient to support his conviction. We affirm.

**FACTS**

On January 26, 2017, Deniayous Caleb Buckner assaulted M.K., an attorney. M.K. did not know Buckner. Buckner did not say anything to M.K. or take anything from him. M.K. reported to police that he was leaving his apartment to meet a potential new client when he was attacked. M.K. never heard from the potential client again. Officers discovered that the number that the potential client used was listed under a prepaid cell phone that was used only around the time of the assault. M.K. told officers that appellant James Lockhart Lang could be responsible for the assault. M.K. and Lang had been involved in contentious litigation.

In May 2019, Buckner and his attorney met with law enforcement. Buckner reported that he and a friend did small jobs for Lang, a shop owner. Lang approached Buckner and said he needed "someone taken care of." Buckner stated that Lang paid him to assault M.K.

In August 2019, officers went to Lang's shop and showed him a picture of Buckner. Lang denied knowing Buckner. Another individual at the shop recognized Buckner. Lang then stated that Buckner once unloaded a truck for him. Respondent State of Minnesota charged Lang with aiding and abetting third-degree assault.

In December 2019, Buckner pleaded guilty to third-degree assault. In exchange for a lenient sentence, Buckner agreed to cooperate in Lang's prosecution. In June 2020,

2

Buckner's attorney informed the state that Buckner's friend, D.S., offered Buckner $80,000 to leave Minnesota and cease cooperating in Lang's prosecution.

In November 2021, Lang agreed to a trial on stipulated facts and evidence, pursuant to Minn. R. Crim. P. 26.01, subd. 3. Among other things, Lang stipulated that:

> Mr. Buckner stated that Mr. Lang hired him to assault [M.K.] and that he was paid $500 for doing so. He stated that Mr. Lang 'reached out' to him and asked if Mr. Buckner could 'take care of somebody' for him, calling it a 'separate job.' He stated that Mr. Lang gave him information directly and then Mr. Buckner realized it was a 'dirty job.' He said Mr. Lang instructed him to get a 'burnout' phone . . . and to set up a meeting with [M.K.] posing as a new client but using a fake name. Mr. Buckner described sitting with Mr. Lang as Mr. Lang 'googled' [M.K.]'s information and provided Mr. Buckner with [M.K.]'s home address. Mr. Buckner stated that he got in contact with Mr. Lang after the assault, and Mr. Lang paid him both in cash and via check. He was not able to recall the specifics regarding the check and where he cashed it. He also said he was paid by Mr. Lang to do other legitimate odd jobs around Mr. Lang's cabinet shop . . . and recalled receiving checks as payment.
> . . . .
>
> [D]iscovery . . . included checks issued to Mr. Buckner by the [cabinet shop] on May 26, 2017 [for $387], June 9, 2017, June 16, 2017, July 14, 2017, October 6, 2017, and March 29, 2018 [for $100].
> . . . .
>
> During [an] interview [with law enforcement] Mr. Buckner . . . stated that initially, [D.S.] was the go-between between himself and Mr. Lang before he met Mr. Lang in the winter [of] 2017.

The district court found Lang guilty of third-degree assault and sentenced him to a stay of imposition, under Minn. Stat. § 609.135 (2020); successful completion of three

years of probation would result in a misdemeanor conviction. Lang filed a direct appeal, but it was stayed to allow him to seek postconviction relief.

Lang filed a postconviction petition, claiming that his conviction was based on false evidence and that newly discovered evidence showed that he is innocent. M.K. had sued Lang and Buckner. The alleged new evidence was statements Buckner and D.S. made in the civil suit. At a postconviction hearing, Lang did not call any witnesses; rather, the parties stipulated to the admission of exhibits, including transcripts from depositions.

Buckner's depositions included statements that Lang did not tell him to assault M.K. on the day of the assault, Lang did not directly approach him and ask him to "take care of" M.K., and he did not believe that Lang used D.S. to get him to commit the assault.

But Buckner also stated that Lang had approached him and said he needed someone "taken care of" and he was told "to inadvertently meet [M.K.] for the dirty job." Buckner stated that he got information from Lang days before the assault, but he could not remember if or when he met with Lang to discuss M.K. because he "had an addiction." He stated that he believed that Lang communicated with him through D.S., and he heard that he was supposed to get information from Lang about M.K., but he received it from D.S.

In addition to making statements that called into question whether it was Lang or D.S. who approached Buckner and provided him with instructions, Buckner also made statements that contradicted his original statements regarding who paid him and how he was paid.

In D.S.'s sworn statement, he stated that he grew up with Buckner and believed that Buckner is "an experienced and believable liar." D.S. stated that he hired Buckner to work

4

at Lang's cabinet shop in May 2017. He stated that he believed that Buckner and Lang did not know each other before May 2017, and that Lang likely would not recognize Buckner because Lang's involvement with Buckner was limited to signing his timecards and checks. D.S. denied giving Buckner cash or telling Buckner that he would pay him to leave the state.

The district court denied Lang's postconviction petition. It determined that "the contents of the depositions created doubt in the [c]ourt about what happened in this case," but concluded that

> [a]lthough Mr. Buckner's story changed in that he first said he got information directly from [Lang] to later saying he received it through [D.S.], he did not outright deny [Lang]'s involvement in planning the assault in his statements during the depositions. In fact, he stated he was supposed to get the information from [Lang] but got it from [D.S]. . . . Further, it was stipulated in the court trial that Mr. Buckner had said [D.S.] was the go-between between himself and [Lang] before he met [Lang] in the winter 2017, and that Mr. Buckner told his attorney [D.S.] had offered him $80,000 to not testify in [Lang]'s case, so [D.S.]'s involvement . . . is not a new discovery to [Lang].

The district court also questioned the "reliability" of Buckner's statements made in the depositions because, rather than changing his story, he could have been fully explaining D.S.'s role or his memory had deteriorated. Because Lang did not call Buckner or D.S. as a witness at the postconviction hearing, the district court determined that, based on the exhibits, Lang failed to show that he was entitled to relief. This appeal followed.

5

*Postconviction relief*

Lang argues that the district court abused its discretion by denying him postconviction relief. We review a district court's postconviction decision for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). A district court abuses its discretion when it exercises its discretion in an arbitrary or capricious manner, bases its decision on an erroneous view of the law, or makes clearly erroneous factual findings. *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). Here, the district court granted a postconviction hearing. Lang had the "burden of establishing by a fair preponderance of the evidence facts that warrant reopening the case." *See McKenzie v. State*, 754 N.W.2d 366, 368-69 (Minn. 2008). Lang waived the evidentiary hearing and presented the issues on written submissions.

### *False evidence*

Lang argues that his conviction is based on false evidence because Buckner recanted his original story implicating Lang.

Minnesota courts apply a three-prong test when evaluating false-testimony claims. *Opsahl v. State*, 677 N.W.2d 414, 422 (Minn. 2004) (citing *Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928)). Under the *Larrison* test, a petitioner is entitled to a new trial if: (1) the court is "reasonably well-satisfied that the testimony in question was false; (2) without that testimony the [fact-finder] might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after trial." *Opsahl*, 677 N.W.2d at 422-23. The first two prongs are "compulsory." *Martin v.*

*State*, 825 N.W.2d 734, 740 (Minn. 2013). If a petitioner fails to satisfy the first or second prong, he is not entitled to relief. *Reed v. State*, 925 N.W.2d 11, 19 (Minn. 2019). The third prong is "not an absolute condition precedent to a new trial," but is a relevant consideration. *Martin*, 825 N.W.2d at 740 (quotation omitted). "[T]he credibility of the new evidence is critical." *Andersen v. State*, 940 N.W.2d 172, 178 (Minn. 2020).

The district court concluded that Lang failed to satisfy the first prong—that the court was "reasonably well-satisfied that the testimony in question was false." *Opsahl*, 677 N.W.2d at 423; *see also Reed*, 925 N.W.2d at 19. The district court determined that it was "unclear" whether Buckner's statements in the depositions rendered his original statement false and expressed concern regarding the "reliability" of Buckner's deposition statements. The district court also determined that Lang failed to meet his burden, based on the "written submissions and exhibits," to show that Buckner's original "testimony was actually false." We agree.

"[A] statement that merely contradicts earlier testimony, evidence of a witness's general unreliability, and a witness's failure to give a full explanation of [his] trial testimony are insufficient to establish false trial testimony under the *Larrison* test." *Gilbert v. State*, 982 N.W.2d 763, 770 (Minn. App. 2022), *aff'd on other grounds* 2 N.W.3d 483, 484 (Minn. 2024). Here, Buckner's deposition statements may have contradicted his original statement. In fact, inconsistencies existed within the depositions themselves. For example, Buckner testified that he had truthfully reported that Lang approached him and said he needed someone "taken care of," but then he stated that he told a prosecutor that Lang did not directly approach him and ask him to "take care of" M.K. Buckner also

7

testified that he did not believe that Lang used D.S. to get Buckner to commit the assault, but then stated that he was truthful when he told prosecutors that he believed that Lang communicated with him through D.S. While these are seemingly contradictory statements, as the district court found, Buckner never denied Lang's involvement in the assault. Regardless, whether Buckner received the information directly from Lang or from D.S. through Lang, Buckner did not recant his statement that Lang was involved.

The district court stated that it afforded Lang an evidentiary hearing to resolve "doubts and provide clarity as to the inconsistencies raised by the depositions." But Lang did not present any witness testimony. The district court stated that Lang failed to meet his burden because "[w]ith nothing more than the written submissions and exhibits, the [c]ourt [wa]s not reasonably well satisfied that Mr. Buckner's trial testimony was actually false." The district court did not abuse its discretion by denying postconviction relief because Lang failed to show that the trial evidence was false.

### Newly discovered evidence

Lang also argues that newly discovered evidence—Buckner's and D.S.'s statements—show that he is innocent. To be entitled to relief, Lang must establish that the evidence (1) was not known to him at the time of the stipulated facts trial; (2) could not have been discovered through due diligence before trial; (3) is not cumulative, impeaching, or doubtful; and (4) would probably produce a more favorable result. *See Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

The district court determined that the evidence was not newly discovered because Lang could have discovered the statements before trial. Buckner was a known witness at

8

the time of trial and Buckner had identified D.S. before trial, so Lang could have obtained statements from Buckner and D.S. before trial. As the district court determined, if the evidence was not known at the time of trial, it could have been discovered. The district court did not abuse its discretion by denying postconviction relief because the evidence is not newly discovered. *See id.*

***Insufficient evidence***

Lang argues that the evidence is insufficient to sustain his conviction because Buckner was the only witness, and he is an unreliable accomplice. *See* Minn. Stat. § 634.04 (2016) (stating that conviction cannot be had upon uncorroborated accomplice testimony).

When, as is the case here, a petitioner "agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3, rather than subd. 4, his ability to raise a sufficiency-of-the-evidence challenge has been preserved." *State v. Eller*, 780 N.W.2d 375, 379 (Minn. App. 2010), *rev. denied* (Minn. June 15, 2010). In considering a claim of insufficient evidence, this court determines "whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to allow the [fact-finder] to reach [its] verdict." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn. 1988). "In determining whether the evidence is sufficient, [this court] defer[s] to the fact-finder's credibility determinations and assume[s] that the fact-finder disbelieved any evidence that conflicted

9

with the verdict." *State v. Barshaw*, 879 N.W.2d 356, 366 (Minn. 2016) (quotation omitted).

There is no dispute that Buckner assaulted M.K. The district court had to find that Lang aided and abetted the assault. "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2016).

Here, the stipulated evidence was sufficiently corroborative. *See Staunton v. State*, 784 N.W.2d 289, 297 (Minn. 2010) (stating that evidence corroborating accomplice testimony "need only link the defendant to the crime in some substantial degree," which tends "to affirm the truth" of the testimony and point to defendant's guilt (quotation omitted)). The evidence showed that when Buckner assaulted M.K., he said nothing to M.K. and took nothing from him. M.K. did not recognize Buckner. Buckner had no connection to M.K. But at the time, M.K. and Lang were engaged in contentious litigation. And, after the assault, Lang paid Buckner $500.

An investigator showed Lang a photograph of Buckner. Lang stated that he had never seen Buckner before. When another individual recognized Buckner as an employee of Lang, Lang limited his connection to Buckner. The district court found that Lang signed no fewer than ten checks payable to Buckner, and that Lang's initial denial—followed by a claim that he had limited interaction with Buckner—was inconsistent with the evidence. While the district court found that Lang was not credible, it found that Buckner was credible.

As the district court concluded, the evidence showed that (1) Buckner and M.K. did not know each other; (2) Buckner had no motive to attack M.K.; (3) M.K.'s refusal to satisfy court-ordered judgments to Lang provided Lang motive; (4) Lang denied knowing Buckner; (5) Lang minimized his contact with Buckner "in an obvious attempt to distance himself from [Buckner] to escape responsibility for the assault"; and (6) Lang paid Buckner in excess of $500 in the months following the assault. This evidence sufficiently supports Lang's conviction.

**Affirmed.**