*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0066**

William Larry Armstrong, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 18, 2024
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-04-001405

Beau D. McGraw, McGraw Law Firm, P.A., Lake Elmo, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicholas G. Kimball, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Larson, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

Appellant challenges the district court's order denying postconviction relief. Because the district court appropriately concluded that the petition was time-barred and procedurally barred, we affirm.

# FACTS

Appellant William Larry Armstrong assaulted his girlfriend's three-year-old son, K.L., causing the child's death. Armstrong was indicted on charges of first- and second-degree murder. *See* Minn. Stat. §§ 609.185(a)(6)(c), .19, subd. 2 (2002).

In July 2004, Armstrong agreed to a stipulated-facts proceeding, pursuant to Minn. R. Crim. P. 26.01, subd. 3. Armstrong agreed that the district court would try count two—intentionally causing K.L.'s death while committing a felony assault—on stipulated facts. The parties agreed that if the district court found Armstrong guilty, he would receive a 400-month prison sentence. The sentence was an upward departure based on aggravating factors of the child's particular vulnerability, Armstrong's position of trust and authority over the child, and Armstrong's particular cruelty in committing the assault and failing to seek prompt medical treatment. Armstrong waived a jury determination of the aggravating factors. The state agreed to dismiss the first-degree-murder charge if the district court found Armstrong guilty of count two and imposed the 400-month prison sentence.

Armstrong signed a petition to plead guilty to count two, which was done not to plead guilty, but rather to document his jury-trial waiver. The prosecutor noted that the petition-to-enter-a-plea-of-guilty document explained every right Armstrong would have if he had a trial. Armstrong indicated that he understood that, by completing the petition, he was not pleading guilty but was waiving his right to a jury trial.

The district court then asked Armstrong if he was satisfied with his attorneys' representation and satisfied that they knew "every detail that [he felt was] important to [his] side of the case." Armstrong replied in the affirmative. Armstrong agreed to the facts in

the stipulation. The district court made the stipulation part of the record and took the matter under advisement.

On July 29, 2004, the district court found Armstrong guilty of second-degree murder. At the sentencing hearing, Armstrong stated that "there's some things that haven't been made known to the [c]ourt" and submitted a written statement to the district court. The district court read Armstrong's statement and made the "written allocution" "part of the public record." Before imposing the 400-month prison sentence, the district court stated: "[T]he deed here was horrific and, in my considered judgment, an evil happening."

In November 2004, Armstrong appealed, raising a single issue that his waiver of his right to a jury finding of the facts authorizing the enhanced sentence was invalid. *State v. Armstrong*, No. A04-2142, 2006 WL 91336, at *1 (Minn. App. Jan. 17, 2006), *remanded* (Minn. Oct. 17, 2006). This court initially concluded that Armstrong's waiver was invalid. *Id.* at *3. The supreme court granted review, which it stayed pending its decision in *State v. Thompson*, 720 N.W.2d 820 (Minn. 2006). Following *Thompson*, this court concluded that Armstrong's waiver was adequate and affirmed his sentence. *State v. Armstrong*, No. A04-2142 (Minn. App. Feb. 27, 2007), *rev. denied* (Minn. May 15, 2007). Judgment was entered on June 14, 2007.

On March 10, 2023, Armstrong, through counsel, moved to "withdraw his *Lothenbach* submission of . . . 2004." In a supporting memorandum, Armstrong argued that he should be allowed to withdraw his plea because it was invalid. He also argued that he received ineffective assistance of trial and appellate counsel, and that trial counsel had a conflict of interest.

On December 1, 2023, the district court denied Armstrong's postconviction-relief petition. The district court concluded that Armstrong's petition was time-barred because it was filed well outside of the two-year limitations period and Armstrong did not demonstrate that the interests-of-justice exception to the two-year limitations period applied. The district court also determined that Armstrong's petition was procedurally barred because Armstrong could have raised all the claims at the time of his direct appeal.

This appeal followed.

**DECISION**

*Characterization of issue*

Armstrong argues that the district court should have permitted him to withdraw his guilty plea, claiming that his plea was invalid. But Armstrong did not plead guilty; he agreed to a stipulated-facts proceeding, and based on the stipulated facts, the district court found Armstrong guilty.

The procedure used in this matter is found under Minn. R. Crim. P. 26.01, subd. 3. "The defendant and the prosecutor may agree that a determination of the defendant's guilt, or the existence of facts to support an aggravated sentence, or both, may be submitted to and tried by the court based entirely on stipulated facts, stipulated evidence, or both." Minn. R. Crim. P. 26.01, subd. 3(a). "On submission of the case entirely on stipulated facts, stipulated evidence, or both, the court must proceed under subdivision 2 of this rule as in any other trial to the court." Minn. R. Crim. P. 26.01, subd. 3(e). There is not a guilty plea to withdraw. Rather, the district court found Armstrong guilty of second-degree murder. *See* Minn. R. Crim. P. 26.01, subd. 2(a). For these reasons, we construe

4

Armstrong's appeal as taken from the denial of a petition for postconviction relief rather than a denial of a motion to withdraw a guilty plea. *See James v. State*, 699 N.W.2d 723, 727 (Minn. 2005) (stating that after the time for direct appeal, the only way to seek plea withdrawal is by postconviction proceedings).

**Postconviction petition**

Appellate courts review a district court's summary denial of a postconviction petition for an abuse of discretion. *Martin v. State*, 969 N.W.2d 361, 363 (Minn. 2022). A district court abuses its discretion in postconviction matters "when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017) (quotation omitted). "Legal issues are reviewed de novo," but factual issues are reviewed to determine "whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.* (quotation omitted).

### *Time-bar*

When a petitioner has filed a direct appeal, he must file a postconviction petition within two years of the appellate court's disposition of the direct appeal. Minn. Stat. § 590.01, subd. 4(a)(2) (2022). Here, Armstrong's direct appeal was final in June 2007. He filed his postconviction petition in 2023, well outside of the two-year limitations period.

The statute provides exceptions to the two-year time-bar. *Id.*, subd. 4(b) (2022). Under these exceptions, however, a claim must be brought within two years from "the date the claim arises." *Id.*, subd. 4(c) (2022). The exception upon which Armstrong relies allows consideration of an untimely petition when "the petitioner establishes to the

5

satisfaction of the court that the petition is not frivolous and is in the interests of justice." *Id.*, subd. 4(b)(5).

Armstrong argues that he was precluded from bringing his petition at an earlier time because he was unable to obtain his case file and his prior attorneys refused to assist him. Several times between 2005 and 2020, Armstrong filed requests in district court for his "complete" case file. In August 2020, the district court ordered that Armstrong would "receive a single copy of his court file." But he claims that to this day he has not received the complete file. Armstrong fails to explain how he was able to file his postconviction petition without the complete file if he needed it to seek relief. This claim does not fit under the interests-of-justice exception.

Armstrong claims that he needed the allocution he made at sentencing. The district court read the allocution and stated that it would be part of the public record. In June 2023, Armstrong requested from the court administrator "[a] copy of my written allocution, that [the district court] made part of the record." In October 2023, the records clerk informed Armstrong that the records center was "unable to locate [his] written request submitted" to the district court. This written allocution is not in the record.

Importantly, Armstrong does not explain why he needed the allocution and how it applies to his petition for relief. At the time of sentencing, the district court read it and still concluded: "[T]he deed here was horrific and, in my considered judgment, an evil happening." After reading the allocution, the district court did not determine that there were facts that would alter the outcome. The district court found Armstrong guilty of second-degree murder, described the offense as "horrific" and "evil," and sentenced

6

Armstrong to 400 months in prison. It is difficult to understand how the allocution would alter the outcome at this point when it did not influence the district court in 2004. This claim does not fit under the interests-of-justice exception.

Armstrong argues that trial and appellate counsel were ineffective for failing to investigate. He asserts that he

> made both trial and appellate counsel aware [of a witness who] stated that [K.L.'s mother] admitted to her that she was the one who caused [K.L.]'s injuries . . . . Trial counsel never . . . attempt[ed] to obtain this evidence. Then, when Armstrong informed appellate counsel, he was told that office did not have an investigator, counsel would not try to seek out the evidence, and that the only challenge that she would raise would be to the length of Armstrong's sentence. If Armstrong had this evidence, he would not have waived his right to a jury trial.

But the record shows that an investigator working with Armstrong's trial counsel interviewed this witness several times. The contents of the interviews do not include Armstrong's claim that K.L.'s mother admitted to the witness that she caused her son's injuries.

Moreover, Armstrong challenges matters of trial strategy, which appellate courts do not review. *See Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004); *see also Sanchez-Diaz v. State*, 758 N.W.2d 843, 848 (Minn. 2008) (stating that extent of investigation and deciding which evidence to present is trial strategy). And appellate counsel is not required to raise every issue on appeal but may choose to present only the most viable or meritorious claims. *See Chavez-Nelson v. State*, 948 N.W.2d 665, 671 (Minn. 2020).

Armstrong also argues that trial counsel had a conflict of interest because counsel's wife worked in the prosecutor's office and in the same division as the prosecutor trying his case. Armstrong claims that he did not learn of the relationship until after he waived his right to a jury trial. But he does not state when he learned of the relationship or what prevented him from raising a complaint about it earlier.

Because Armstrong does not show that he was impeded from bringing his postconviction petition earlier and no exception to the time-bar applies, the district court appropriately concluded that Armstrong's petition was time-barred.

### *Procedural-bar*

When direct appeal has been taken, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Armstrong's claims—the inability to obtain his file, his allocution at sentencing, his attorneys' investigation, and his attorney's relationship with a prosecutor—were known at the time of direct appeal. The only exception is his ineffective-assistance-of-appellate-counsel claim. But we have explained how that claim fails under the time-bar. Because Armstrong could have raised his other claims at the time of direct appeal, the district court appropriately concluded that Armstrong's petition was procedurally barred. The district court did not abuse its discretion by denying Armstrong's petition for postconviction relief.

**Affirmed.**